[No. 15304. Department One. May 31, 1919.]

RALPH LESTER, *Respondent*, v. ALEX. MILLMAN *et al.,*
*Appellants.*[1]

MALICIOUS PROSECUTION (3, 17-1)—PROBABLE CAUSE—ADVICE OF AT-
TORNEY—QUESTION FOR JURY. In an action for malicious prosecution,
whether defendant made a full and fair statement of facts to the
prosecuting attorney, is a question for the jury, where it appears
that his criminal prosecution of plaintiff for larceny rested largely
upon automobile tracks leading between their homes, alleged to have
made at 2 a. m.; and, according to plaintiff's testimony, when charged
with the theft he offered to show defendant that such tracks must
have been made before 11:30 p. m., since they were crossed by a
motorcycle at that time; the defendant not having disclosed such
fact to the prosecutor.

Appeal from a judgment of the superior court for
Pierce county, Card, J., entered December 7, 1918,
upon the verdict of a jury rendered in favor of the
plaintiff, in an action for malicious prosecution. Af-
firmed.

*W. A. Johnson,* for appellants.

*O. S. Galbreath,* for respondent.

MITCHELL, J.—This action was brought by Ralph
Lester, respondent, against Alex. Millman and Mary
Millman, husband and wife, appellants, to recover
damages for malicious prosecution. The jury re-
turned a verdict against appellants in the sum of
$250, upon which verdict a judgment was rendered,
after a motion for a new trial was denied. Appeal
has been taken from the judgment.

The only assignment of error is the denial by the
trial court of appellants' motion for a directed verdict
at the conclusion of all the testimony. The motion was
based upon the contention that the evidence showed

[1]Reported in 181 Pac. 878.

appellants had acted upon the advice of a deputy prosecuting attorney, after making a full and truthful statement of all known facts relating to probable cause for the prosecution.

The rule stated in *Simmons v. Gardner,* 46 Wash. 282, 89 Pac. 887, L. R. A. 1915 D 16, followed in the cases of *Anderson v. Seattle Lighting Co.,* 71 Wash. 155, 127 Pac. 1108; *Hightower v. Union Sav. & Trust Co.,* 88 Wash. 179, 152 Pac. 1015, Ann. Cas. 1918 A 489; *Main v. Healy,* 100 Wash. 253, 170 Pac. 570; *Borg v. Bringhurst,* 105 Wash. 521, 178 Pac. 450; and *Bruce v. Elmergreen,* 106 Wash. 359, 180 Pac. 135 (quoting from the syllabus in the first case), is as follows:

"In an action for malicious prosecution, where it appears from the undisputed evidence that the prosecutors acted upon the advice of the prosecuting attorney after making a full and truthful statement of all known facts relating to probable cause for the prosecution, it becomes the duty of the court to find probable cause as a matter of law, and to direct a verdict for the defendants; . . ."

Considered from another viewpoint, the cases of *Finigan v. Sullivan,* 65 Wash. 625, 118 Pac. 888, and *Baer v. Chambers,* 67 Wash. 357, 121 Pac. 843, Ann. Cas. 1913 D 559, and authorities therein cited, in effect declare that, in an action for malicious prosecution, where there is evidence warranting the jury in concluding that the defendant did not fully and truthfully communicate to the prosecuting attorney all the material facts within his knowledge bearing upon plaintiff's guilt of the crime for which he was prosecuted, then the court cannot decide as a matter of law, that defendant was justified by the advice of the prosecuting attorney, but the question of probable cause is one for the jury.

In the present case, the parties were, and for about

ten years had been, neighbors. They lived in the country some distance from Tacoma. The alleged criminal act consisted of breaking into the cellar at the Millman home and carrying away personal property belonging to them, about two o'clock in the morning of June 9, 1918. At that time there were with respondent, at his parents' home, a brother, Dave Lester, Mrs. Dave Lester, and a sister, Miss Lester. On the evening of the 8th of June, respondent visited with the neighborhood merchant and family from eight o'clock until about eleven o'clock, when he returned home in his automobile. This is corroborated by the merchant. Respondent testified he retired about 11:30, without having been near the Millman place. On that same evening, Miss Lester was taken from her home about eight o'clock by a friend, on a motorcycle, to a theater in Tacoma. Returning, they left the show about eleven o'clock, and arrived at her home about 11:30 o'clock. Mrs. Millman testified she was certain she retired at one o'clock the night of June 8th, laid awake quite a while, and about two o'clock, upon being disturbed, she looked out the window and saw respondent, whom she recognized, and another person, taking the property out of the cellar under an outbuilding about forty feet away. Mr. Millman worked at a sawmill at night, and on his returning home about 6:15 a. m., June 9th, his wife told him of the larceny. He testified he immediately went out to the cellar and noticed footprints which he followed out to automobile tracks which led to the Lester home. He went to the barn where respondent and his brother Dave were, called respondent out, and accused him of the theft. Upon denial by respondent, Millman took out his watch, noticed the time, and said: "I will give you one hour's time to bring that back." His account of what then occurred, as testified to in the present trial, was:

"I went home, changed my clothes, had breakfast, came back about two hours later, saw him again; I said, 'You haven't brought the goods back.' He said, 'No.' He wanted me to search his place. Might as well search for a needle in haystack; good many brushes and buildings around there. He says, 'Come in, I will show you the tracks which way I came in last night.' I didn't want to listen to that, because I already had positive proof; I didn't want any more of it. I said, 'I will miss my car.' He said, 'I will take you to the car with my machine.' I said, 'No, my friendship ceases with a man doing dirty trick like that.' "

He further testified that he then called at the prosecuting attorney's office and related to one of the deputies Mrs. Millman's story, his finding and following the footprints and automobile tracks, and the two interviews with respondent, took the deputy prosecuting attorney's advice, made a criminal complaint, and had respondent arrested for larceny. At the giving of the testimony of Millman, as above set out, the deputy prosecuting attorney was present, and, when called into the witness chair, he testified that Millman's testimony was substantially the same as he had represented the facts upon which he advised the prosecution of respondent; but on cross and redirect examination, he stated the information he received prior to the arrest was Mrs. Millman's having seen and recognized respondent at the time of the theft, and Mr. Millman's having seen and followed the footprints and automobile tracks up to respondent's home.

On the contrary, respondent's testimony showed there was nothing unusual about his footprints, nor the tracks of his automobile. Between the two interviews on the morning of June 9th, after talking with his sister and learning that she and her escort returned home about 11:30 the night before, and having talked with her escort, who lived near by, respondent ex-

amined the tracks of his automobile, made as he came in the night before, and observed that they were plainly crossed over by the motorcycle. In this connection, it may be mentioned that several witnesses, including the young man who used the motorcycle, testified that, upon an examination made that morning between seven and nine o'clock, it was apparent that the motorcycle, which came in about 11:30 o'clock, was the last vehicle along the road at the Lester home, and, as it ran to the house, crossed all other tracks, including those made by respondent's automobile. So that the conversation which took place between respondent and Millman at the second interview on the 9th of June, as testified to by respondent and corroborated by his brother Dave, was this:

"He said, 'You haven't brought it back?' I said, 'No, sir, I haven't anything to take back; I don't see how I can bring it back.' He said, 'I will have you arrested.' I said, 'All right.' He said, 'You took it, my wife seen you out of the window.' I said, 'That is funny.' I said, 'I was in at eleven.' He said it was around two o'clock when done. In the meantime I had went up and seen Stone; that was the man out with my sister; he took her to a show. Q. He was not present? A. No, sir. Q. Say what he said and what you said. A. I said, 'I came in at eleven o'clock.' He said, 'None of your lies goes here, you know you done it.' I said, 'Millman, if you come out to the road I will show you where I came in my machine; my sister said Stone and her got home half past eleven.' I said, 'Come out to the road, I will show you where his crossed mine.' He said, 'None of your lies.' He said, 'I haven't time to listen to lies.' He went off. I said I would take him to town in my machine if he missed his car."

Relative to the fairness of Mr. Millman in reporting the matter to the deputy prosecuting attorney, he has no excuse, by way of haste or excitement at the time

of detailing the facts, for it was on Saturday he first called, at which time the deputy prosecuting attorney was too busy to talk with him and fixed the following Monday, when the story was told upon which Millman was advised of probable cause to make the criminal complaint. Giving the testimony of Millman and the deputy prosecuting attorney, as to the statements and report made by Millman of the facts upon which he was advised there was reasonable ground for the prosecution of respondent, the strongest consideration in favor of appellants, it is obvious there was ample testimony, which the jury was at liberty to believe, that appellants did not make to the deputy prosecuting attorney a full and truthful statement of all known material facts relating to probable cause for the prosecution, because respondent, corroborated by his brother, testified that, in addition to what Millman said occurred in the second conversation on June 9th, he told Millman that his sister, Miss Lester, had told him that she and her friend had returned home that night at half past eleven, and that if he would go out to the road he would show him where they crossed his automobile tracks. It is manifest such declaration and information by respondent were important. Millman, who was depending in large measure upon the contention that automobile tracks were followed to the Lester home from the scene of a theft at two o'clock that morning, was told by respondent that his sister had told him she and her friend returned at 11:30 the same night, and that if he would go out to the road with him he would show him where they had crossed his automobile tracks. The materiality of that part of respondent's statements, shown by his proof to have been omitted by Millman, is apparent.

The question of whether that material additional information was, or was not, given to Millman, as testi-

fied to by respondent's witnesses, was no concern of the trial judge, who properly determined that, under the rule, he was stripped of all right or necessity to declare probable cause as a matter of law and to direct a verdict.

Judgment affirmed.

MACKINTOSH, TOLMAN, FULLERTON, and MAIN, JJ., concur.