[No. 22272. Department One. February 24, 1930.]

H. D. Puffe, *Appellant*, v. Gerald Frink *et al.*, *Respondents*.[1]

*Crandell & Crandell,* for appellant.
*Battle, Hulbert & Helsell,* for respondents.

Millard, J.—This is an action to recover damages for malicious prosecution. The defendants' challenge, at the close of their case, to the sufficiency of the evidence was sustained, the jury was discharged and judgment dismissing the action was entered. From that judgment the plaintiff appealed.

Appellant, H. D. Puffe, a blacksmith foreman, had been in the employ of the respondent Washington Iron Works, a corporation, approximately twelve years on August 4, 1928. Deeming it impossible to operate the furnace in his department as directed by Gerald Frink, president and manager of the respondent corporation, Puffe decided to resign and so in-

[1]Reported in 285 Pac. 430.

formed Frink, at the same time agreeing to retain the position until some one was obtained to fill same. His successor was secured August 10, 1928, and about four-thirty p. m. of that day Puffe prepared to depart from the plant in the automobile of his son-in-law (another employee of the respondent corporation) who was waiting near the door of the blacksmith shop.

Puffe testified that he removed his working clothes, which were very greasy and dirty, wrapped them in newspapers and threw them into the furnace; that he was the only person in the blacksmith shop or office of that department at the time, and that he did not destroy anything other than the dirty clothing and the newspapers. He donned his street clothing and rode home in the automobile with his son-in-law.

George Stewart, a foreman of respondent corporation, noticing an unusual amount of smoke proceeding from the furnace stack, went into the shop to investigate the cause. He was informed by the watchman, Pasquelle Varonni, that Puffe had thrown a bundle of blueprints into the furnace. It appears that two boxes or drawers were provided in the blacksmith shop in which to keep blueprints of the forgings constructed under the supervision of the blacksmith foreman. On these blueprints were data as to the size and amount of material used in the manufacture of certain equipment. The prints were withdrawn from the boxes or drawers as needed and replaced in the boxes when not in use.

Subsequent to Puffe's departure, some of the blueprints were missing, according to the testimony of Stewart, who complained to the prosecuting attorney of the loss. The only information Stewart gave to the prosecutor was that Varonni stated Puffe burned the prints. Stewart was advised by the prosecutor to have Varonni call at the prosecutor's office to be inter-

viewed, as prosecution could not be instituted unless some one could testify as to the destruction of the prints. Stewart later conducted Varonni to the prosecuting attorney's office. The story there related by Varonni resulted in the arrest and trial of Puffe upon the charge of malicious destruction of property. Of that charge Puffe was acquitted in December, 1928, whereupon he instituted this action against Gerald Frink and wife, George Stewart and wife, and the Washington Iron Works. The trial of the action for malicious prosecution culminated in judgment of dismissal as stated above.

Counsel for appellant contend that the prosecution for malicious destruction of property was procured by the making of a false statement or by inducing a false statement to be made to the prosecuting attorney. Appellant concedes the rule is that, if the record discloses that the respondents made a full and true statement to the prosecuting attorney who instituted the criminal action, probable cause exists which would be a complete defense to the action for malicious prosecution. *Borg v. Bringhurst,* 105 Wash. 521, 178 Pac. 450. However, it is insisted, a want of probable cause is shown as completely, where a false statement is made to the prosecuting attorney, as where an incomplete statement is made.

"Therefore, if the evidence offered by the appellant is true, the prosecution was procured by making a false statement to the prosecuting attorney, and there is want of probable cause. In any event, it was a question for the jury to decide."

Of the testimony offered in behalf of appellant, the following is emphasized by his counsel: A short time subsequent to his becoming blacksmith foreman, the appellant purchased a record book in which he kept memoranda of blacksmith tables, weight of materials

and similar information. A few days after appellant's resignation, an assistant foreman of the respondent corporation demanded that appellant return the book, and Frink, in the presence of Stewart, threatened the dismissal of Donald Kitt, Puffe's son-in-law, and serious trouble for Puffe if the book were not surrendered. The book was retained by Puffe, Kitt was discharged, and Puffe was prosecuted for malicious destruction of property. Puffe also testified that no one was present when he destroyed his working clothes and the newspapers; that he did not burn any blueprints; and that Varonni was outside of the shop and in such a position that he could not see appellant within the shop, therefore the information given by Varonni to the prosecuting attorney was false.

That the prosecuting attorney did not institute the criminal action against Puffe upon any statement made by anyone other than Varonni, who was not made a party defendant to this action for malicious prosecution, stands undisputed. That the prosecution was not for the refusal to surrender the memorandum book, and that the loss of the book or its retention by Puffe was never mentioned to the prosecuting attorney also are unopposed by contrary testimony. The prosecuting attorney testified that no one discussed with him the retention of the memorandum book by Puffe, and that the only complaint made was as to the loss of the blueprints. The prosecuting attorney testified:

"Q. Upon whose statement did you institute that prosecution? . . . A. Mr. Varonni, it is his statement that I took. Q. Did you ever talk with Mr. Frink at all about it, at any time? A. Never at any time. I never had met Mr. Frink at that time, excepting one time he served on a jury in which I was trying a case in the federal court, years ago. Q. Did you start that prosecution on any statement of facts that was made by Mr. Stewart? A. No. I would not have started

the prosecution on Mr. Stewart's statement, and told him that I could not start it, I didn't think, from what he told me, there was evidence sufficient for me to bring the case, but if he had this other party that he said he had and would bring that other party to my office, and if his statement bore out what he said he would say, then I thought there would be a case. Q. As a matter of fact, Mr. Stewart told you that Mr. Varonni had told him that he saw Mr. Puffe put those blueprints in the furnace? A. That is correct. Q. And then you told Mr. Stewart to bring Mr. Puffe up and let him tell what happened? A. Varonni, yes. I should change the name. Q. And you talked with him? A. I did. Q. He didn't pretend—Mr. Stewart didn't pretend to know anything about putting the blueprints in, himself? A. No, my recollection was Mr. Stewart —that I could not show that the blueprints were burned on Mr. Stewart's statement at all. Q. And isn't it true that he told you frankly, that he didn't know anything about it, except what Mr. Varonni told him? A. Yes, he told me that. Q. Did Mr. Varonni, when he came up, tell you that he saw Mr. Puffe put the blueprints in the furnace? A. He did.''

Mr. Stewart testified:

''I went to the prosecuting attorney and told him what this Varonni told me, and he said 'Is that all you know about it?' And I said 'Yes.' 'Did you see him burn the blueprints?' I said 'No.' 'Well,' he said, 'You are not a very good witness then.' He said, 'Did this man tell you he saw them burned?' I said 'Yes.' He said, 'Then bring the witness up.' Q. Then what did you do? A. I fetched the witness up. Q. Did you say anything at that conversation? A. No, I never said a word. Q. Did Varonni tell the prosecuting attorney the same thing he told you? A. Yes, sir. Q. Did you have anything else at all to do with the prosecution or the commencement of that prosecution? A. I did not.''

It is not material whether the respondents were actuated by malice and in a spirit of revenge sought

the criminal prosecution of Puffe as suggested by the testimony that Kitt (Puffe's son-in-law) was discharged and appellant was threatened with serious trouble for refusal to surrender the memorandum book. The sole question is whether there was a question of the existence or want of probable cause to go to the jury.

"While the element of malice may be inferred from the want of probable cause, the converse of the rule does not obtain, and want of probable cause must always be expressly shown. *Noblett v. Bartsch,* 31 Wash. 24, 71 Pac. 551, 96 Am. St. 886. Probable cause cannot be inferred from the existence of malice, and evidence of malice is, therefore, incompetent to show the want of probable cause." *Hightower v. Union Savings & Trust Co.,* 88 Wash. 179, 152 Pac. 1015, Ann. Cas. 1918A 489.

Were the respondents or either of the respondents the proximate and efficient cause of inducing the prosecuting attorney to institute criminal proceedings against Puffe?

"To sustain an action for malicious prosecution, it must affirmatively appear as a part of the case of the party demanding damages, that the party sought to be charged was the proximate and efficient cause of maliciously putting the law in motion." *McClarty v. Bickel,* 155 Ky. 254, 159 S. W. 783.

The prosecution was based upon the loss of the blueprints. The record is devoid of any testimony connecting Frink with visiting the prosecuting attorney or ever talking with him about the prosecution of Puffe or in any manner acting singly or in concert with any one to effect the prosecution of Puffe. If Stewart made a full and true statement of all the facts to the prosecuting attorney and from the information thus disclosed the prosecution was determined upon, Stewart would have a complete defense to the action

for malicious prosecution. *Hightower v. Union Savings & Trust Co., supra.*

The testimony is not controverted that Stewart was advised, when he consulted the prosecuting attorney and disclosed all the information he had—that Varonni told him (Stewart) that Puffe threw the blueprints into the furnace—that the evidence was insufficient for the prosecution of Puffe. Stewart, upon the advice and at the request of the prosecuting attorney, took Varonni to the prosecuting attorney, who, after hearing all the facts Varonni said he knew, commenced the prosecution. The prosecuting attorney did not institute the prosecution on facts supplied by Stewart.

The intimation that Varonni, who was not made a party defendant to this action, was under the control of the respondents and was induced by them to make a false statement to the prosecuting attorney, is not warranted, as there is no evidence even tending to support such a charge.

There is no evidence that the prosecution claimed to have been malicious was instituted or continued by respondents or by any one of them; therefore, the trial court rightly dismissed the action.

The judgment should be and it is affirmed.

MITCHELL, C. J., PARKER, TOLMAN, and BEALS, JJ., concur.