[No. 27739.   Department Two.   November 30, 1939.]

NEW YORK LIFE INSURANCE COMPANY, *Appellant,* v. RICHARD NEWPORT, *a Minor, et al., Respondents.*[1]

[1]Reported in 96 P. (2d) 449.

*Graves, Kizer & Graves* and *J. W. Greenough,* for appellant.

*Thos. A. E. Lally* and *John J. Lally,* for respondents.

JEFFERS, J.—This is an appeal by plaintiff, New York Life Insurance Company, from an order granting a new trial to defendants, on the specific ground of failure to give defendants' requested instructions Nos. 6 and 7.

Plaintiff brought this action under the declaratory judgment act (Rem. Rev. Stat. (Sup.), § 784-1 [P. C. § 8108-21] *et seq.,* Laws of 1935, chapter 113, p. 305, as amended by Laws of 1937, chapter 14, p. 39), to have its rights and liabilities determined under a certain life insurance policy issued by plaintiff upon the life of Paul E. Newport, Jr. Defendants demanded a jury, claiming they had a right so to do under Rem. Rev. Stat. (Sup.), § 784-9 [P. C. § 8108-29], there being an

issue of fact to be determined. The procedure in this case was not questioned.

It is undisputed that plaintiff, on February 27, 1933, issued an insurance policy on the life of Paul E. Newport, Jr., in consideration of the annual premium of $36.88, which premium covered a period of one year, from February 27, 1933, to February 27, 1934; that, by the terms of this policy, plaintiff agreed to pay, upon the death of Paul E. Newport, Jr., who was then approximately eighteen years of age, the sum of two thousand dollars to his brother, Richard Newport, a minor, who was then about seven years of age. The policy contained the following provision:

*"Self-Destruction.*—In event of self-destruction during the first two insurance years, whether the insured be sane or insane, the insurance under this policy shall be a sum equal to the premiums thereon which have been paid to and received by the company and no more."

The policy also contained the usual two year non-contestable clause required to be a part of all such policies issued in this state.

It appears that Paul E. Newport, Jr., died on or about January 21, 1934, and prior to the expiration of the first two insurance years of the policy; that, on the death of insured, and after an investigation of the facts surrounding such death, plaintiff denied all liability to pay to the beneficiary the sum of two thousand dollars and so notified Paul E. Newport, Sr., father of the minor beneficiary, but plaintiff did admit liability for, and offered to pay to the father of the beneficiary, the sum of $36.88, the amount of the premiums paid, in full settlement of all its liability under the policy; that plaintiff, at all times after making such investigation, claimed insured's death was deliberately self-inflicted, and that plaintiff was therefore

not liable under the policy, except as herein stated, while defendants alleged and at all times claimed insured's death was not self-inflicted, and that plaintiff was liable for the full amount of the policy.

There was considerable testimony introduced relative to the general habits, activities, mental and physical condition of insured, and it must be admitted that he was an exceptional young man in many respects. The testimony shows that, in spite of a physical handicap of one leg being about an inch and a half shorter than the other, resulting apparently from an early sickness, he excelled in many outdoor sports, and had taken a great interest in the boy scout work. There was testimony to the effect that, in 1930, two operations were performed on insured, in an endeavor to correct this physical defect. There was testimony, which the jury were entitled to believe, that these operations were not as successful as hoped for, although the defect was helped to some extent; that, after these operations, there was soreness and pain in the foot, and that the boy began to be troubled with insomnia; that visits were made to doctors in regard to this condition of nervousness, and that a nerve specialist was recommended; that he was withdrawn from high school at various times and sent to the country. There was some testimony that the boy had developed some sort of a complex and had threatened to take his life.

On January 21, 1934, insured took his mother's coupe and apparently drove to a small clearing in the woods just south of the Spokane city limits, where his body was found the next day, lying on the ground about twenty-five feet from the car. A few feet from the head, and backward from it, was a .410 short-barreled shotgun, which the insured had purchased a few days before, without the knowledge of his family or friends. At the time the boy was found, all of his clothing was

in place, his shirt and undershirt being tucked in his trousers, and his outer garments being in place. The clothing was not penetrated in any way, and there was no blood on the clothing, except in the immediate area of the wound. It was evident the gun must have been held practically against the body, as the wad from the shell was found in the heart. Plaintiff demonstrated to the jury the manner in which it contended the act could have been committed, while counsel for defendants claimed and attempted to demonstrate the impossibility of self-destruction. There was testimony also that, about noon of the day of insured's death, he was seen, with a stranger whom the witnesses did not recognize, driving his mother's car on Grand avenue, toward and about five miles from the place where the body was found.

The jury returned a unanimous verdict for plaintiff, and further found that defendants were entitled to recover $36.88, as returned premium, and interest thereon from date of proof of death.

Defendants moved for judgment notwithstanding the verdict, and in the alternative for a new trial, upon the last four statutory grounds permitted under Rem. Rev. Stat., § 399 [P. C. § 8225]. The court denied the motion for judgment notwithstanding the verdict, and granted defendants' motion for new trial, as shown in the order, for the sole reason that the court erred in failing to give defendants' proposed instructions Nos. 6 and 7. Plaintiff has appealed, making the following assignments of error: (1) In entering the order granting a new trial; (2) in holding that it failed to give defendants' amended instruction No. 6 and proposed instruction No. 7; (3) in holding that it failed to give defendants' amended instruction No. 6 and proposed instruction No. 7, and that such failure was

error; (4) in failing and refusing to enter judgment for plaintiff upon the verdict of the jury.

While the trial court, as shown by its memorandum opinion, did not feel that, under the instructions as given, the respondents were limited in their argument to the jury on their theory of the case, which was that the shot may have been fired by some person other than deceased, either accidentally or intentionally, or that the jury were, in their deliberations, precluded from giving consideration to such theory, still the court seemed to feel that, because of its failure to give the proposed instructions, the theory of respondents may not have received the consideration of the jury to which it was entitled.

The trial court granted the new trial on one specific ground, but we have consistently held, since our decision in *Rochester v. Seattle etc. R. Co.,* 75 Wash. 559, 135 Pac. 209, that, although a motion for new trial be granted on a specific ground, where there is an appeal from such order by the adverse party, the one in whose favor the order was granted may, on such appeal, urge in support of the order before this court any ground set out in the motion, and that the appellate or reviewing court, even though it be of the opinion that the order cannot be sustained upon the specific ground stated, or reason given, by the trial court, will not reverse the order if it can be sustained upon any ground stated in the motion.

Amended instruction No. 6, proposed by respondents, provides:

"The court instructs you that 'the burden of proving suicide in an action on a life insurance policy is not sustained by proof of motive, with circumstances probably indicating suicide, if there is equal probability that death was accidental,' or was deliberately or accidentally caused by some person other than the deceased."

Instruction No. 9, as given by the court, provides:

"You are instructed that the burden of proving suicide is not sustained by proof of motive, with circumstances probably indicating suicide, if there is equal probability that the death was accidental."

Instruction No. 4, as given, provides:

"You are instructed that upon a showing that death was caused by external and violent means, the presumption arises that the death was accidental, and such presumption remains in the case until overcome by evidence to the contrary.

"You are further instructed that if you find from a fair preponderance of the evidence that the death of Paul E. Newport Jr. was caused by external and violent means, then the law raises a presumption that such death was accidental, and upon such showing, aided by the presumption, a prima facie case of accidental death is made.

"You are instructed that suicide is an affirmative defense and in order that the plaintiff prevail, it must establish by a fair preponderance of the evidence that the wound which caused the *death of Paul E. Newport Jr. was intentionally self-inflicted.*" (Italics ours.)

The court gave instruction No. 5, as follows:

"You are instructed, however, that in order to find that the *death of Paul E. Newport Jr. was intentionally self-inflicted,* it is not necessary for you to find from the evidence that he had a motive or reason for committing suicide." (Italics ours.)

Instruction No. 7, as given, provides in part:

"If you find from the evidence that such a controversy exists, and also find under these instructions that the wound which caused the *death of Paul E. Newport Jr. was intentionally self-inflicted,* then your verdict must be for the plaintiff.

"You are further instructed, however, that if, upon all the evidence, it is your conclusion that the death of Paul E. Newport Jr. by accident is equally as likely and probable as by suicide, then the defendant would

be entitled to the benefit of the presumption of law that the death of the insured was not by suicide, and it would be your duty to return a verdict in favor of the defendant." (Italics ours.)

Instruction No. 8, as given, is as follows:

"You are instructed that in determining whether *Paul E. Newport Jr., the insured, intentionally and designedly took his own life,* you should consider any motive or lack of motive therefor, his condition of health, and all other facts and circumstances surrounding and connected with the death." (Italics ours.)

Again, in instruction No. 10, as given, the court instructed the jury that, in order for appellant to prevail, it must not only prove that the insured killed himself, but it must be shown that his act was deliberate, and that his death was not accidental.

Instruction No. 7, prepared by respondents and refused by the court, provides:

"The court further instructs you that unless the plaintiff, New York Life Insurance Company, has established by a preponderance of the evidence that Paul E. Newport, Jr., intentionally killed himself, you shall return a verdict for the defendant, Paul E. Newport, guardian ad litem of Richard Newport, a minor, for the sum of Two Thousand Dollars ($2,000), with six per cent (6%) interest thereon from the time evidence or proof of his death was furnished to the plaintiff; and

"You are further instructed that unless such intentional killing of deceased by himself has been so established by a preponderance of the evidence, the defendants do not have to prove that he accidentally killed himself, or that he was accidentally or intentionally killed by someone else, because the law presumes, in the absence of such proof by the plaintiff, that the deceased did not kill himself."

It is evident, we think, that the only question really involved in this trial was whether or not insured's

death was self-inflicted. If the jury found that it was, appellant was entitled to prevail; if not, appellant could not prevail, but the jury must find for respondents. The court, in at least seven different instructions, told the jury that, before the appellant could recover, it must prove by a fair preponderance of the testimony that the death of Paul E. Newport, Jr., was deliberately and intentionally self-inflicted. How the court could, in plainer language, have told the jury that appellant could prevail only under such circumstances, or how the jury could have been told more plainly that, unless they could so find, the presumption was that he did not kill himself, we are at a loss to understand. We think the court fairly and correctly instructed the jury on all the issues as presented by both parties, and could not have gone further than it did and have any basis in the evidence for any instruction which might have been given.

The court, having properly covered the issues in the case by the instructions as given, erred in granting a new trial because of its failure to give the requested instructions.

■ We appreciate the rule relative to the discretion of the trial court in granting or refusing to grant a new trial, but here we do not think there is any discretion involved, this being a purely legal matter, in which case we are in no way bound by the action of the trial court.

The cases of *McGee v. Wineholt,* 23 Wash. 748, 63 Pac. 571; *Gabrielson v. Hague Box & Lumber Co.,* 55 Wash. 342, 104 Pac. 635, 133 Am. St. 1032; *Polk v. Spokane Interstate Fair,* 73 Wash. 610, 132 Pac. 401; and others cited by respondents in support of their contention that the trial court in the instant case did not instruct the jury on their theory of the case, are not in point, for the reason, among others, that they either

held, as in the *McGee* case, *supra,* that the court did not instruct at all on a matter in issue, or that the court, in its instructions, did not properly present the issues to the jury.

We have considered the other grounds of respondents' motion, and we are of the opinion that the order cannot be sustained on any of the grounds given.

■■ In *Fagerdahl v. North Coast Transportation Co.,* 178 Wash. 482, 35 P. (2d) 46, we held that, where a verdict is returned in favor of plaintiff, and the defendant moves for judgment notwithstanding the verdict and in the alternative for a new trial, and the trial court overrules the motion for judgment notwithstanding the verdict and grants the motion for a new trial, and the plaintiff appeals, the defendant may, upon that appeal, present the question as to whether the evidence was sufficient to take the case to the jury.

In the instant case, respondents contend that there was not sufficient evidence to take the case to the jury, and that their motion for judgment notwithstanding the verdict should have been granted. We are satisfied there was sufficient evidence introduced herein to warrant the jury in reaching the verdict returned, and that the trial court correctly denied the motion for judgment notwithstanding the verdict.

■ Respondents also contend that appellant should not have been permitted to raise the question of self-destruction, because of the two year noncontestable clause in the policy, also claiming that the noncontestable clause controls over the suicide clause. While we have serious doubts as to respondents' right to raise these questions at this time, in any event we think this court, in *Pacific Mutual Life Ins. Co. v. Fishback,* 171 Wash. 244, 17 P. (2d) 841, has answered the questions raised, contrary to respondents' contention. See, also, *Wright v. Philadelphia Life Ins. Co.,* 25 F. (2d) 514.

For the reasons herein given, the order granting a new trial must be, and is, reversed, with instructions to the trial court to enter judgment on the verdict.

BLAKE, C. J., BEALS, STEINERT, and GERAGHTY, JJ., concur.

