[No. 30822.   Department One.   September 3, 1949.]

JESSE LEE HAYES, *Respondent and Cross-appellant*, v. SEARS, ROEBUCK AND COMPANY, *Appellant*.[1]

[1]Reported in 209 P. (2d) 468.

*Elliott & Lee*, for appellant.

*Lloyd Holtz*, for respondent and cross-appellant.

BEALS, J.—The plaintiff in this action, Jesse Lee Hayes, entered the employ of defendant, Sears, Roebuck and Company, a corporation, early in September, 1945. His duties included operating an elevator and working in the shipping room. He engaged in outside activities, such as dealing in junk, and transporting for compensation fellow employees to and from defendant's building.

The defendant owned and operated a large retail establishment in Seattle and, in an adjoining building, a mail order and delivery plant serving approximately twenty retail stores throughout the state of Washington and adjacent territory. From this latter building, merchandise was shipped to defendant's retail stores and delivered at the adjoining retail establishment.

In the late spring of 1946, a shortage of about one hundred automobile tires at the Seattle retail store was discovered. Professional private detectives were engaged,

who, upon investigation, found that plaintiff was in the habit of transporting to his home in his truck, after working hours, a considerable number of tires, as well as other merchandise.

In the late afternoon of July 29th, in response to a telephone message, plaintiff reported at defendant's general office, whence he was conducted to the manager's office, where Mr. Wandell, the operating superintendent of the retail store, Mr. Potter, a special agent in defendant's employ, who held a "Special Deputy Sheriff's Commission," and Mr. Pratt, a private detective in the employ of the Burns Detective Agency, questioned plaintiff for several hours. At about eight o'clock p. m., Mr. Sweeney, assistant manager of the local Burns agency, joined the group.

It seems that defendant accorded to its employees the privilege of purchasing articles from its store, for their own use or that of their immediate families, at a discount of ten per cent. During the course of the evening, plaintiff admitted that he had purchased merchandise from defendant at the allowed discount, which he had resold at a profit of ten per cent or a little less. Later plaintiff wrote and signed the following statement (which was introduced in evidence upon the trial of this action as plaintiff's exhibit No. 1):

"July 29, 1946

"Jesse Lee Hayes
1576 Renton Highlands
Renton, Washington

"I, the undersigned, do hereby state under oath that all statements herein contained are true to the best of my knowledge. I have been an employe of Sears & Roebuck for nearly a year in the Shipping Room and while so employed I have bought a considerable amount of mdse. for friends. This mdse. was taken to my home at the above address or delivered to my friends' home. I have bought this mdse. and received a 10% discount from Sears Roebuck. When I resold this mdse. at above the ceiling price charged by Sears Roebuck, my profit in these transactions was nearly my discount of 10%. I explained to my friends that this charge was for delivery and trouble ($700 total mdse. bought). I realize I have no dealer's license and I know now that I have violated the sales tax law. I also have not

a license giving me the right to charge a cartage fee. I also realize now that what I did was wrong and against company policy. My only thought was to help my friends and to make a little money on the side. I make this statement of my own free will and am under no duress of any kind. This is also in my own handwriting.

"[Signed] Jesse Lee Hayes
"Witness                                        1576 Renton Highlands
[Signed] G. S. Potter                        Renton, Wash."

After signing the foregoing statement, plaintiff, accompanied by the persons above named, drove to the homes of some of his neighbors, who were questioned concerning articles which they had purchased from plaintiff. The party then returned to defendant's establishment, whence plaintiff drove to his home in his truck, leaving defendant's store shortly after one o'clock a. m.

Plaintiff returned to defendant's store the following morning, where he remained until about seven o'clock that evening. Employees of the store were also questioned concerning plaintiff's operations; Messrs. Potter and Sweeney and the other questioners being of the opinion that plaintiff had not fully disclosed the extent of his activities.

It appears that plaintiff was paid his salary for these days, including payment for every hour he was questioned outside of working hours.

During the day, Mr. Potter communicated with D. T. Shinn, Esquire, a member of the staff of the prosecuting attorney for King county, informing him of the situation as disclosed by plaintiff and others. Mr. Shinn expressed the opinion that plaintiff, in following the course above referred to, had committed the crime of larceny, and advised Mr. Potter to obtain all possible information from plaintiff and others concerning the transactions in question.

Late in the afternoon of July 30th, Mr. Potter and his associates took plaintiff to the county jail, where he was booked "for further investigation by the Prosecuting Attorney."

Additional information having been obtained concerning plaintiff's activities, on July 31st, Mr. Shinn directed the

preparation of a complaint charging plaintiff with the offense of grand larceny, and a complaint was prepared, which was signed by Mr. Potter. Pursuant to the complaint, a warrant was issued and, on the same day, served upon plaintiff in the county jail. A few days thereafter, plaintiff posted a bail bond and was released.

A preliminary hearing was held before a justice of the peace, August 7, 1946, plaintiff entering a plea of not guilty. The cause was heard August 14th following, and continued to September 11th, when the justice completed the hearing and entered a written ruling discharging the plaintiff Hayes.

October 14, 1946, plaintiff instituted this suit against defendant, by his first cause of action charging false arrest and unlawful imprisonment, for which plaintiff demanded judgment for five thousand dollars, and by his second cause of action charging defendant with malicious prosecution, for which damages were demanded in the sum of twenty-five thousand dollars.

The case came on for trial before the court and jury, June 17, 1948. On defendant's motion, the trial court withdrew from the jury the second cause of action, basing its ruling upon the proposition that defendant had made a full and fair disclosure of the facts to the prosecuting attorney, and submitted to the jury only the the first cause of action, upon which the jury returned a verdict in favor of plaintiff in the sum of five thousand dollars.

In due time, defendant filed alternative motions, first, for judgment in its favor notwithstanding the verdict, on the first cause of action, or, in the event of the denial of that motion, for a new trial.

Plaintiff filed a motion for a new trial upon the second cause of action.

After argument, the trial court entered an order denying defendant's motion for judgment in its favor on the first cause of action notwithstanding the verdict of the jury, granting defendant's alternative motion for a new trial on the first cause of action (basing this order upon the ground that the court had given the jury an erroneous instruction

to defendant's prejudice and to which defendant had excepted), and granting plaintiff's motion for a new trial on the second cause of action.

Defendant has appealed to this court from the order denying its motion for judgment notwithstanding the verdict in plaintiff's favor on the first cause of action, and from the order granting defendant's alternative motion for a new trial upon the first cause of action "when there was no evidence upon which to submit said cause of action to the jury." Defendant also appealed from the court's order granting plaintiff's motion for a new trial on his second cause of action.

Plaintiff has cross-appealed from the order granting defendant's motion for a new trial on plaintiff's first cause of action.

Defendant makes the following assignments of error:

"The trial court committed reversible errors, as follows:

"(1) In denying the challenge to the sufficiency of the plaintiff's evidence.

"(2) In refusing to permit the defendant to move for a directed verdict.

"(3) In refusing the defendant's requested instruction withdrawing the first cause of action from the jury.

"(4) In denying defendant's motion for judgment notwithstanding the verdict on the first cause of action.

"(5) In granting defendant's alternative motion for new trial as to the first cause of action, when there was no evidence to support a recovery on that cause of action.

"(6) In granting a new trial on second cause of action."

Plaintiff assigns error upon the order of the trial court granting defendant's motion for a new trial on the first cause of action.

In this opinion, we shall refer to the parties as appellant (the defendant in the action) and cross-appellant (the plaintiff in the action).

Appellant makes six assignments of error, *supra*. Whether appellant may here present the first four of its assignments depends upon whether or not it may argue its fifth assignment of error, which presents appellant's appeal from the order of the trial court granting its motion for a new trial. Cross-appellant has also appealed from this order.

·· We repeat appellant's fifth assignment of error:

"The trial court committed reversible errors, as follows:

. . .

"(5) In granting defendant's alternative motion for new trial as to the first cause of action, when there was no evidence to support a recovery on that cause of action."

Cross-appellant contends that this assignment of error is not available to appellant, citing several of the following cases: *Clallam County v. Clump*, 15 Wash. 593, 47 Pac. 13; *McInnes v. Sutton*, 35 Wash. 384, 77 Pac. 736; *Yamada v. Hall*, 145 Wash. 365, 260 Pac. 243; *Bloomberg v. Bloomberg*, 148 Wash. 638, 269 Pac. 852.

In the case of *Crooks v. Rust*, 125 Wash. 563, 216 Pac. 869, it appeared that the appellant here (the defendant below) had moved the trial court for judgment in his favor notwithstanding the verdict rendered by the jury in plaintiff's favor, and for a new trial. The trial court denied the motion for judgment notwithstanding the verdict, and granted the motion for a new trial upon the ground of the insufficiency of the evidence to sustain the verdict. The appellant appealed from the order denying his motion for judgment in his favor notwithstanding the verdict. This court, upon its own motion, dismissed the appeal, saying:

"Appellant, having been granted a new trial, cannot appeal upon the ground of a denial of the motion for judgment notwithstanding the verdict, for the reason that there has been no final appealable order or judgment entered, and 'this court will not "permit a cause to be brought before it by piecemeal for review, unless clearly authorized so to do by legislative enactment."' *Schlotfeldt v. Bull*, 13 Wash. 242, 54 Pac. 33; *Windt v. Banniza*, 2 Wash. 147, 26 Pac. 189."

In the case at bar, as above stated, cross-appellant has also appealed from the order granting a new trial upon cross-appellant's first cause of action.

An order granting a new trial is not a final order and is, therefore, not appealable, unless it is specifically provided by law that such an order may be reviewed by an appellate court. By Rem. Rev. Stat., § 1716(6) [P.P.C. § 5-1],

it is provided that an appeal may be prosecuted from an order granting a new trial, by the party aggrieved by the order, who, in this case, is the cross-appellant.

In the case at bar, we are confronted with a peculiar situation. Appellant argues that the trial court should have granted its motion for judgment in its favor notwithstanding the verdict returned by the jury in cross-appellant's favor, upon the latter's first cause of action. This question suggests consideration of Rule of Practice 14, 18 Wn. (2d) 42-a, which reads as follows:

"Whenever a motion for a judgment notwithstanding the verdict and, in the alternative, for a new trial shall be filed and submitted in any superior court in any civil cause tried before a jury, and such superior court shall enter an order granting such motion for judgment notwithstanding the verdict, such court shall at the same time, in the alternative, pass upon and decide in the same order such motion for a new trial; such ruling upon said motion for a new trial not to become effective unless and until the order granting the motion for judgment notwithstanding the verdict shall thereafter be reversed, vacated, or set aside in the manner provided by law. An appeal to the supreme court from a judgment granted on a motion for judgment notwithstanding the verdict shall, of itself, without the necessity of a cross-appeal, bring up for review the ruling of the trial court on the motion for a new trial; and the supreme court shall, if it reverses the judgment entered notwithstanding the verdict, review and determine the validity of the ruling on the motion for a new trial."

In the case of *Fagerdahl v. North Coast Transportation Co.*, 175 Wash. 600, 28 P. (2d) 107, this court held that the cross-appellant (defendant in the action) was not entitled to present here questions concerning the sufficiency of the evidence to carry the case to the jury, cross-appellant's motion for a new trial having been granted. The case was reheard before this court, sitting *En Banc* (*Fagerdahl v. North Coast Transportation Co.*, 178 Wash. 482, 35 P. (2d) 46), and, after citing *Rochester v. Seattle, Renton & S. R. Co.*, 75 Wash. 559, 135 Pac. 209, the court referred to Rule of Practice 14 above quoted (then Rule of Practice 12, Rem.

Rev. Stat., § 308-12, adopted by this court April 1, 1931), stating:

"We now state the rule to be that, where a verdict is returned in favor of the plaintiff and the defendant moves for judgment notwithstanding the verdict, and in the alternative for a new trial, and the trial court overrules the motion for judgment notwithstanding the verdict and grants the motion for new trial, and the plaintiff appeals, the defendant may upon that appeal present the question as to whether the evidence was sufficient to take the case to the jury. The cases cited in the Departmental opinion, and others that might be cited to the same effect, as supporting the rule there stated, will be overruled."

The case last referred to was cited in *New York Life Ins. Co. v. Newport*, 1 Wn. (2d) 511, 96 P. (2d) 449, and *State v. Bauers*, 25 Wn. (2d) 825, 172 P. (2d) 279.

■ Appellant may not appeal from the order of the trial court granting its alternative motion for a new trial, as appellant was not aggrieved by that order. Had appellant elected to stand upon its motion for judgment notwithstanding the verdict, it might, of course, have appealed from an adverse judgment entered upon the verdict and assigned error upon the court's ruling denying its motion. However, under the rule laid down in the *En Banc* decision in the *Fagerdahl* case, *supra,* appellant may present this question upon cross-appellant's appeal from the order granting appellant's motion for a new trial.

■ In reviewing, on appeal, a trial court's order denying a motion, by a party to an action, for judgment in his favor notwithstanding the verdict of a jury in favor of the opposing party, we take that view of the evidence most favorable to the party against whom the motion is made, no element of judicial discretion being involved in the consideration of such a question. *Cronin v. Shell Oil Co.*, 8 Wn. (2d) 404, 112 P. (2d) 824; *Williams v. Hofer*, 30 Wn. (2d) 253, 191 P. (2d) 306; *Bleyhl v. Tea Garden Products Co.*, 30 Wn. (2d) 447, 191 P. (2d) 851.

In the case of *Mitchell v. Cadwell*, 188 Wash. 257, 62 P. (2d) 41, this court, in an *En Banc* decision, stated that, in

ruling upon a motion for judgment notwithstanding the verdict, only the evidence introduced by the plaintiff should be considered.

Texts and decided cases concerning false arrest and false imprisonment are very numerous, the decisions being by no means harmonious. The basic principles of law applicable to the case at bar are well stated in 22 Am. Jur. 353, 356, 359, §§ 2, 4, 9, respectively.

Appellant relies upon the opinion of this court in the case of *James v. MacDougall & Southwick Co.*, 134 Wash. 314, 235 Pac. 812, in which we reversed a judgment of the trial court rendered upon the verdict of a jury in favor of the plaintiff. Appellant argues that the case last cited is controlling here, but the opinion of this court shows clearly that the facts were different from those here presented. In the *James* case, there was no showing of superior force or restraint, while in the case at bar cross-appellant was questioned at a store which had been closed for the night and, by his testimony, indicated that he was put in fear of the possible use of force by the men who were questioning him for a considerable period of time. Whether or not there was any reasonable ground for apprehension on the part of cross-appellant would be a question for the jury.

Appellant also cites the case of *Weiler v. Herzfeld-Phillipson Co.*, 189 Wis. 554, 208 N. W. 599, in which the supreme court of Wisconsin reversed a judgment in favor of the plaintiff in an action based upon alleged false imprisonment, the action having been tried to a jury, which returned a verdict in favor of the plaintiff.

From the opinion, it appears that the defendant in the action operated a store; that the plaintiff was in defendant's employ as a saleswoman; and that defendant had some reason to suppose that she had been guilty of dishonesty in connection with a sale. The plaintiff was called to the office of the manager, where she was questioned at considerable length concerning the sale which she had made, and, on two occasions, when she inquired if she might leave the office, was told that she could not. The court noted that the plaintiff received pay for the day during which she was

questioned. The court further observed that the plaintiff was in the employ of defendant and was subject to directions from defendant, whose agent was entitled to question the plaintiff concerning the circumstances surrounding the incident which brought about the interview. The court rather strongly criticized the conduct of defendant's agent in questioning the plaintiff and in obtaining a confession from her. In the course of the opinion, the court said:

" . . . The so-called confession might have been made because she feared that, otherwise, she would be sent to jail. That fact might render her confession involuntary, but it would not make her presence in the room false imprisonment. While employers should be admonished that their dealings with their employees under such circumstances must be reasonable and humane, we cannot adopt a rule putting an employer in jeopardy of a charge of false imprisonment when he summons to his office for an interview an employee whose conduct is unsatisfactory or whose fidelity is under suspicion, especially where the office is one in which the employer customarily does his business and the period of the interview is within the time for which the employee is being compensated by the employer. We conclude that the record discloses no evidence sustaining the finding of false imprisonment."

The court held that the evidence did not support the judgment in plaintiff's favor for false imprisonment, and reversed the judgment, with direction to dismiss the action. The court stressed the fact that the plaintiff was questioned during business hours, which distinguishes the case, on the facts, from the case at bar. The facts in the two cases also differ in other particulars.

■ We have considered the other texts and decided cases cited by appellant and those cited by cross-appellant. We have also carefully examined the statement of facts in connection with matters which took place between the parties during the evening of July 29th and the following day, and are of the opinion that the evidence introduced was sufficient to justify submission to the jury of cross-appellant's first cause of action, and that the trial court did not err in denying appellant's motion for judgment in its

favor notwithstanding the verdict of the jury in cross-appellant's favor upon that cause of action.

This disposes of appellant's first five assignments of error. By its sixth assignment of error, appellant contends that the trial court erred in granting cross-appellant's motion for a new trial as to the latter's second cause of action for malicious prosecution.

Cross-appellant contends that appellant may not appeal from this order, arguing that, by appellant's motion for a new trial, the latter asked for a new trial in general terms.

■ This argument is without merit. By its instructions, the trial court withdrew from the jury's consideration cross-appellant's second cause of action, submitting to the jury the questions pertinent to cross-appellant's first cause of action. The first cause of action, then, was the only matter submitted to the jury, and the latter's verdict was rendered in connection therewith.

Appellant's motions for judgment in its favor notwithstanding the verdict and, in the alternative, for a new trial, necessarily referred only to cross-appellant's first cause of action. Cross-appellant's motion for a new trial was, by its terms, limited to his second cause of action.

The order entered by the trial court on the respective motions reads, in part, as follows:

" . . . now, therefore, it is

"Ordered:

"(1) That the defendant's motion for judgment, notwithstanding the verdict on plaintiff's first cause of action, be and the same is hereby denied.

"(2) That the defendant's alternative motion for a new trial on plaintiff's first cause of action be and the same is hereby granted on the ground of error in law, to-wit, in the giving of the Court's Instruction No. 8.

"(3) That the plaintiff's motion for new trial on his second cause of action be and the same is hereby granted."

This order clearly indicates that appellant's motions were directed only to cross-appellant's first cause of action.

On this appeal, appellant may present the questions raised by its sixth assignment of error, which we shall now consider.

■ This court, in common with many other courts, has repeatedly held that trial courts have a wide discretion in granting or refusing new trials, and that the exercise of this discretion in granting a new trial will not be disturbed, save in cases where pure questions of law are involved or where it can be held that, from the record, it appears that the court abused its discretion. *Dibley v. Peters*, 200 Wash. 100, 93 P. (2d) 720; *Easton v. Chaffee*, 8 Wn. (2d) 509, 113 P. (2d) 31.

In the case of *State v. McDaniels*, 30 Wn. (2d) 76, 190 P. (2d) 705, we said:

"A challenge to the sufficiency of the evidence or a motion having that effect admits the truth of the evidence of the party against whom the challenge or motion is made and all inferences that reasonably can be drawn from such evidence, and requires that the evidence be interpreted most strongly against the challenger or movant party and in the light most favorable to the opposing party. *Kellerher v. Porter*, 29 Wn. (2d) 650, 189 P. (2d) 223, and cases therein cited. . . .

"Where an order granting a motion for new trial is general and does not specify the ground or grounds upon which it is based, the inquiry of this court is limited to the determination of the question whether the evidence was sufficient to take the case to the jury; and unless it can be said, as a matter of law, that the verdict of the jury was the only verdict that could be rendered, the order granting the motion for new trial must be affirmed. *Henry v. Larsen*, 19 Wn. (2d) 690, 143 P. (2d) 841, and cases therein cited.

"When a motion for a new trial is made upon a number of grounds and the order does not disclose upon which of the grounds the ruling is based, the order will not be reversed if it was within the sound discretion of the court to grant the motion upon any of the grounds assigned. *Ahrens v. Anderson*, 186 Wash. 182, 57 P. (2d) 410."

Of course, the jury did not render any verdict in connection with cross-appellant's second cause of action.

■ It is the law that, when a party defendant to an action for malicious prosecution shows that a full and complete disclosure of all pertinent facts concerning the matter was presented to the prosecuting attorney and was by him considered sufficient to show probable cause, such a state of

facts constitutes a complete defense to an action for malicious prosecution, and the case should not be submitted to the jury. *Borg v. Bringhurst*, 105 Wash. 521, 178 Pac. 450; *Lester v. Millman*, 107 Wash. 300, 181 Pac. 878; *Eberhart v. Murphy*, 113 Wash. 449, 194 Pac. 415; *Puffe v. Frink*, 155 Wash. 578, 285 Pac. 430; *Carr v. Zellerbach Paper Co.*, 169 Wash. 493, 14 P. (2d) 35; *Christiansen v. Anderson*, 179 Wash. 368, 37 P. (2d) 889; *Brooks v. Bolde*, 11 Wn. (2d) 37, 118 P. (2d) 193.

The same authorities approve the rule that, when the disclosure to the state's attorney was not complete or truthful, an action for malicious prosecution generally states a question to be determined by a jury.

■ It is also the law that the burden rests upon a plaintiff in the position of cross-appellant to show lack of probable cause for the institution of the prosecution. In the case at bar, cross-appellant did show that he had been acquitted by the magistrate, which constitutes *prima facie* evidence of lack of probable cause.

The following occurred during the direct examination of Mr. Shinn, a former deputy prosecuting attorney:

"Q. Who determined what complaint was to be made against Mr. Hayes, if any? A. I did. Q. In the justice court? A. I did. Q. Who drew the complaint, or had it drawn? A. I did. Q. Did you say anything to Mr. Potter as to who would sign it? A. Yes, sir; I did. Q. Tell the jury. A. I told Mr. Potter that the customary thing was for the complaining witness to sign these complaints, however, if he wanted me to do it I would be glad to do it, and he said it didn't make any particular difference, and at the time I was very busy, and I didn't wait for it to be drawn, and I walked back to my office. I was not present when he got it or signed it. Q. On the basis of the facts as he stated them to you and the witnesses' statements as he presented them to you, did you believe the crime of grand larceny had been committed? A. Yes, sir; I did. Q. And did you tell Mr. Potter you believed a crime of grand larceny had been committed? A. Yes, sir; I did. Q. Before he signed the complaint? A. Yes, sir; indeed."

Later, Mr. Shinn testified that he did not see the complaint after it had been prepared; that he had "handed the dope

sheet to the girl and told her to make it up, and I walked away, and I never saw this." He also stated that the complaint charged cross-appellant with general grand larceny, while it was Mr. Shinn's idea that the charge was to be "taking money rather than property—definitely and specifically money," the money being the profit of which cross-appellant had deprived appellant. Mr. Shinn testified that he had had several conversations with Mr. Potter and had been convinced that a crime had been committed by cross-appellant, and had so advised Mr. Potter.

In the case of *Pallett v. Thompkins*, 10 Wn. (2d) 697, 118 P. (2d) 190, it appeared that the plaintiff had been arrested by deputy sheriffs Thompkins and Pero, pursuant to a warrant issued by a justice of the peace upon a complaint sworn to by the defendant Thompkins, charging plaintiff with the crime of petit larceny. Plaintiff was subsequently tried and acquitted upon that charge. He then brought suit against the sheriff and the two deputies. The action was tried to a jury, which returned a verdict in favor of the plaintiff, and, from a judgment entered upon the verdict, defendants appealed to this court. This court noted that the trial court had tried the action as one for malicious prosecution and not as an action for false imprisonment, the arrest having been made upon a warrant valid upon its face. The opinion called attention to the fact that

"The gist of the action for malicious prosecution rests in malice and want of probable cause. [Citing cases.] To maintain the action, these elements must be *alleged* and *proved*."

The court also noted that a *prima facie* case of want of probable cause, from which malice may be inferred, is made by proof that the criminal proceedings were dismissed or terminated in plaintiff's favor, and that, in the case cited, the plaintiff had made a *prima facie* case of want of probable cause. The opinion continues:

"The facts necessary, however, *to establish probable cause* present a question of law to be decided by the court. The existence of such facts is, of course, to be determined by the jury. But if facts sufficient to establish probable cause are shown and are undisputed, then the court should declare,

as a matter of law, that there was probable cause and dismiss the action. *Hightower v. Union Savings & Trust Co.*, 88 Wash. 179, 152 Pac. 1015, Ann. Cas. 1918A, 489. A warrant may issue only upon evidence which would be competent in the trial of the offense before a jury; and the facts must be sufficient to lead a man of prudence and caution to believe the offense had been committed. *Ladd v. Miles*, 171 Wash. 44, 17 P. (2d) 875."

After discussing the facts, this court held that information received by the law enforcement officers constituted probable cause for the arrest of the plaintiff, quoting from the case of *Ton v. Stetson*, 43 Wash. 471, 86 Pac. 668, as follows:

" 'We are of the opinion that the *prima facie* showing of want of probable cause here made, taken in connection with the surrounding facts and circumstances, would not warrant a jury in finding or inferring malice on the part of [appellants] . . . .' "

The judgment appealed from was reversed, with direction to dismiss the action.

The trial court's order granting cross-appellant's motion for a new trial upon his second cause of action was general in its nature, and, unless the evidence introduced in connection with that cause of action discloses that the record would not support a verdict in cross-appellant's favor, the court's order granting a new trial should be affirmed. We, therefore, must examine the evidence to see if it was sufficient to carry that cause of action to the jury. *State v. McDaniels, supra*, and cases therein cited.

In our discussion of the case of *Pallett v. Thompkins, supra*, we pointed out that, in an action for malicious prosecution, the plaintiff (cross-appellant here) bears the burden of showing malice on the part of the defendant, and also a lack of probable cause for prosecuting the action.

In the case at bar, cross-appellant showed *prima facie* lack of probable cause by introducing evidence of his acquittal by the magistrate. This *prima facie* proof, however, was effectually rebutted by the testimony of Mr. Shinn, at that time a deputy prosecuting attorney for King county,

who, when testifying as a witness in this action, stated that, from the facts given to him (which it appears were truthfully and in good faith conveyed to him by appellant's agent), he was convinced that a felonious crime, namely, larceny, had been committed by cross-appellant Hayes, and that there was ample ground for the prosecution which was instituted against Hayes.

The record shows probable cause for the institution of the prosecution against cross-appellant, which is not refuted by the *prima facie* evidence of lack of probable cause resulting from his acquittal. The record contains no other evidence showing lack of probable cause.

Careful examination of the record convinces us that the evidence discloses probable cause for the action taken by appellant, and that the *prima facie* showing in cross-appellant's favor, as the result of his discharge by the magistrate, did not overcome the weight of the evidence in favor of the existence of probable cause.

The trial court erred in granting cross-appellant's motion for a new trial as to his second cause of action.

We shall now consider cross-appellant's appeal from the order of the trial court granting appellant's motion for a new trial as to cross-appellant's first cause of action.

As above noted, the trial court granted this motion for the reason that the court had erred in giving its instruction No. 8, which reads as follows:

"You are instructed that the agent of this defendant, Grant Sydney Potter, was not an officer of the law, but was acting as a private individual and without authority of a warrant in making the arrest.

"A private person, acting in good faith, may arrest without a warrant a person whom he reasonably suspects of having committed a felony on an occasion already past, but must show that a felony was actually committed and that there was reasonable ground for suspecting that the person arrested committed it.

"An arrest by a private person upon suspicion of committing a felony, if no felony was in fact committed, is an illegal arrest. Where an illegal arrest is made by a private person, he may be held responsible to the person injured thereby."

■ While we hold that the trial court correctly ruled that the instruction above quoted was erroneous and constitutes error which would justify the granting of appellant's motion for a new trial, we briefly refer to cross-appellant's contention that, in deciding this matter, we must consider only the particular ground upon which the trial court granted appellant's motion. In support of this contention, cross-appellant cites the case of *State v. Bauers*, 23 Wn. (2d) 462, 161 P. (2d) 139. This case was expressly overruled by the *En Banc* decision of this court in *Larson v. Seattle*, 25 Wn. (2d) 291, 171 P. (2d) 212. In the latter case, we held that, on appeal from an order granting a new trial, the party upon whose motion the new trial was granted may urge before this court, in support of the order, any of the grounds stated in his motion.

■ We shall now consider the ground above referred to and upon which the trial court granted appellant's motion for a new trial. The pertinent principle is well stated in 22 Am. Jur. 385, § 45, as follows:

"The general rule is that in the absence of statute, a private person or corporation is not responsible for the acts of a special police officer, appointed by public authority, but employed and paid by the private person or corporation, when the acts complained of are performed in carrying out his duty as a public officer. The acts of such a person are, prima facie, those of a public officer, not rendering the private employer liable. It does not follow, however, that because a servant is also a police officer, all his acts are of a public nature; and where he is acting in the performance of the duties for which he is employed, or his movements are actively directed by his employer—in other words, where he represents his employer and not the public—such employer may become liable for his acts. The act of a special policeman in making an arrest cannot be ratified so as to render his employer liable, where the policeman acts in the matter as an agent of the state and not of the employer."

In the case of *Sharp v. Erie R. Co.*, 184 N. Y. 100, 76 N. E. 923, it appeared that a railroad detective drove some boys from railroad cars and that, after they had left the property of the railroad, the detective fired a shot, killing one of the

boys. In an action for death of the boy, the trial court withdrew the case from the jury, holding that, as a matter of law, at the time he fired the shot, the detective was acting in a public capacity as deputy sheriff. The court of appeals reversed the trial court, holding that questions concerning the capacity in which the detective was acting at the time of the shooting were for the jury to decide. In the course of the opinion, the court said:

"A railroad company employing a servant who happens to be a public officer acquires no immunity from such employment. Constables and policemen are often employed by corporations in the same capacity as Wheeler was. It is not beyond the province of a jury in such a case to find that the official acts of the employee are to be used for the benefit of the defendant and in protection of its interests or property. And, hence, in such a case the character of the servant's act is to be determined in the same way and upon the same principles as if he was not a public officer at all. If he acts maliciously or in pursuit of some purpose of his own, the defendant is not bound by his conduct, but if, while acting within the general scope of his employment, he simply disregards his master's orders or exceeds his powers, the master will be responsible for his conduct."

A somewhat similar question was considered by the supreme court of Rhode Island in the case of *Rice v. Harrington*, 38 R. I. 47, 94 Atl. 736.

Appellant excepted to the court's instruction No. 8 upon several grounds, namely, that the instruction ignored the evidence before the jury; that Mr. Potter was a legally commissioned deputy sheriff of King county, and had authority, as such, to make an arrest upon a reasonable suspicion that a felony had been committed and that the person who claimed to have been arrested was the guilty person. Appellant also excepted to the instruction for the reason that

". . . a private person, acting in good faith, may, without a warrant, when he has reasonable grounds for suspecting that a person has committed a felony, take him into custody."

Appellant further excepted to the instruction as being a comment upon the facts.

■ The instruction was erroneous, in that it was for the jury to determine whether, in arresting cross-appellant, Mr. Potter was acting as a private individual and without authority of law, or whether he was acting in an official capacity. If, in fact, at the time cross-appellant was actually arrested and booked, Mr. Potter was acting in the capacity of a special agent of the sheriff's office or as a deputy sheriff, the jury might well have found that appellant was not responsible in damages for false arrest.

Our views above expressed render it unnecessary to consider other arguments, pro and contra, in connection with the question last considered.

Appellant's first three assignments of error are without merit. The trial court did not err in denying appellant's motion for judgment in its favor notwithstanding the verdict of the jury upon cross-appellant's first cause of action.

The trial court erred in granting cross-appellant's motion for a new trial on his second cause of action, and this order is reversed, with instructions to deny cross-appellant's motion.

On cross-appellant's appeal, we hold that the trial court did not err in granting appellant's motion for a new trial on cross-appellant's first cause of action, and this order is affirmed.

JEFFERS, STEINERT, MALLERY, and HILL, JJ., concur.