[No. 25293. Department One. May 2, 1935.]

VERA M. MARLOWE, *Respondent*, v. LLOYD E. PATRICK, *Appellant*.[1]

*J. Speed Smith* and *Henry Elliott, Jr.,* for appellant.
*Vanderveer & Bassett,* for respondent.

[1]Reported in 44 P. (2d) 776.

BEALS, J.—Defendant is a physician and surgeon, specializing in diseases of the ear, nose and throat, and performed a mastoid operation on plaintiff, during the course of which it appears that the facial nerve suffered some injury, which resulted in a degree of facial paralysis.

Plaintiff sued defendant, alleging that, in the course of the operation, defendant penetrated the mastoid without first locating the exact position of the facial nerve, and negligently injured the nerve, to her permanent injury and damage. Defendant answered, denying all negligence on his part. The trial resulted in a verdict in plaintiff's favor in the sum of four thousand dollars, pursuant to which judgment was entered, from which defendant appeals; assigning error upon the denial of his challenge as to the sufficiency of the evidence, upon the denial of his motion for judgment in his favor notwithstanding the verdict, upon the denial of a new trial, and upon the entry of judgment in plaintiff's favor. Appellant also assigns error upon the denial by the trial court of his motion to discharge the jury because of misconduct of respondent's counsel, and upon the refusal of the trial court to give an instruction requested by appellant.

From the evidence, it appears that respondent, finding that she was suffering from a cold and pain in one of her ears, consulted her family physician, who sent her to appellant, who specialized in such diseases. February 4, 1932, appellant, upon examination, found respondent's ear infected and punctured the ear drum, from which pus was immediately discharged, indicating, of course, infection. No definite diagnosis was immediately made. X-rays were taken, respondent was observed, and four days later appellant diagnosed the difficulty as mastoiditis and sent respondent to a

hospital, where, Febrary 9th, he performed upon respondent a mastoid operation.

Very soon thereafter, the right side of respondent's face became paralyzed. She testified that, upon consulting appellant about this difficulty, he at first told her that the matter would probably clear up in a few days, which it failed to do. Respondent testified that appellant then stated that he feared he had cut the nerve, and that it might become necessary for him to perform another operation and sew the nerve together. Respondent consulted another physician and finally went to San Francisco, where an operation was performed, which disclosed that the nerve had been injured, although not severed, and from which operation respondent experienced great benefit, although it is improbable that she will ever completely recover.

The California surgeon who performed the second operation testified that, in an average case of mastoiditis, it required from two weeks to a month for an infection in the middle ear to spread into the mastoid and produce necrosis of the cells and of the bone constituting the cover which protects the facial nerve, and that bone necrosis would not occur in less than eight days. Appellant testified that necrosis could set in within four days after infection, but no medical authority was produced as authority for this statement.

Appellant described the operation and testified that, during the same, he had uncovered the facial nerve, due to the fact that the bony structure protecting the same had become diseased and was soft and crumbled away during the operation. This crumbling of that portion of the gutter which forms the wall of the canal exposed the nerve, which somehow suffered injury. It was, of course, necessary that all infected bone be removed, and only that left which was healthy.

Appellant argues that there was no evidence sufficient to take the case to the jury upon the matter of appellant's alleged negligence in performing the operation, and contends that judgment should have been entered in appellant's favor as matter of law.

A mastoid operation is, of course, a delicate one, but is apparently not dangerous if performed before the infection has spread too far. Appellant, in this instance, told respondent before the operation that, as the appellant's case had been promptly submitted to him, the operation would not be serious. The San Francisco surgeon testified that he had performed approximately one hundred seventy-five such operations, and in no case had injured the facial nerve. Appellant testified that he had performed approximately two hundred such operations. Another surgeon, called as a witness, testified that he had performed the operation around four hundred times.

Respondent contends that, under the evidence, the infection had not existed for a time sufficiently long to have caused the bony structure protecting the nerve to have become necrosed, and that, consequently, if the operation had been performed with skill, this process would not have been interfered with, and the nerve would not have been injured. There can be no question but that the facial nerve was injured, to respondent's very considerable damage. Appellant based his defense upon the ground that the necrosis of the bone caused the same to crumble, and that this was the reason the nerve became exposed and subjected to injury.

There is testimony in the record from which the jury may have found that sufficient time had not elapsed after the infection was first noticed to have permitted the bone to have become necrosed by the date of the operation. Respondent testified that, when she first called appellant's attention to the facial par-

alysis from which she was suffering, he told her it was the result of swelling and would disappear, and that, when it persisted after the swelling went down, he told her that he had made a mistake and had cut the nerve, saying nothing at that time about any necrosis or crumbling of the bone.

The ability and skill of the California doctor who performed the second operation is not disputed, and from his testimony the jury might well have believed that, if the diseased condition of the mastoid had progressed far enough to have caused necrosis of the bone protecting the nerve, appellant would have discovered the diseased condition earlier, and that, if the cold which resulted in the infection originated as respondent testified, necrosis could not have set in, as testified to by appellant, by February 9th, when he performed the operation.

Appellant denied that he had told respondent that he had made a mistake, then testifying:

"I told her that during the operation I had accidentally uncovered the facial nerve, and that I did the best I could under the circumstances I had to deal with, and that was what had happened. I told her that in my office after she left the hospital."

The jury were not required to believe appellant's uncorroborated testimony to the effect that the bone protecting the nerve had become necrosed and crumbled away during the operation, exposing the nerve to inadvertent injury.

It is not contended that appellant adopted an erroneous method of operating, or that the operation which he performed was not proper and, indeed, necessary. Respondent contends that appellant performed the operation in a negligent manner. The distinction between the two classes of cases involving alleged negligence on the part of a physician or surgeon is clearly

pointed out in the case of *Swanson v. Hood,* 99 Wash. 506, 170 Pac. 135, in which this court said:

"But there is an obvious distinction between a claim of negligence in the choice of methods of treatment and a charge of negligence in the actual performance of the work or treatment after such choice is made. As to the first, the charge is refuted, as a matter of law, by showing that a respectable minority of expert physicians approved of the method selected, thus taking the case from the jury. As to the second—a charge of negligent performance—where there is any evidence tending to show such negligence the case is for the jury, as in other cases of negligence, whenever upon the evidence the minds of reasonable men might differ. We think the case here falls within the latter category. There was evidence that appellant admitted to respondent, respondent's wife, his mother-in-law and his clerk that he drilled the holes in the bone too large for the screws used in placing the plate, and, for that reason, wrapped the plate and the bone with a wire, and that the wire caused the trouble."

Appellant calls attention to the testimony of the surgeon who performed the second operation, he having testified that the first operation had been properly performed, and that skillful surgeons, taking every precaution, might accidentally cut or injure the facial nerve. In this connection, appellant cites the case of *Thomson v. Virginia Mason Hospital,* 152 Wash. 297, 277 Pac. 691, in which it was held that in a malpractice case there must be substantial evidence to support a finding of negligence.

In our opinion, the record in the case at bar contains substantial evidence which supports the jury's verdict. It is not supported by that mere scintilla of evidence which this court has held is not sufficient. There is no testimony to the effect that, in operations similar to that performed upon respondent, the facial nerve is frequently injured. The evidence goes no further than to indicate that such injuries occasion-

ally occur. If the jury believed that appellant was not truthful in narrating the history of the operation and describing the condition which he found, they may well have found that the injury to the nerve was caused by appellant's negligence.

Appellant also contends that negligence in such a case as this must be established by expert testimony, citing as authority for this proposition the case of *Brear v. Sweet,* 155 Wash. 474, 284 Pac. 803. In the case cited, this court concluded that the consensus of the medical testimony indicated that the patient's bladder was not punctured during the operation which was the basis of the action. The operating surgeon, two assisting surgeons and the nurse, all testified that the walls of the bladder were not punctured during the operation, and all of the medical witnesses agreed that the history of the case indicated that such was the fact.

In the case at bar, it is not disputed but what the nerve was injured during the operation. No one but appellant testified as to just what the conditions were, as disclosed during the operation, or just what appellant did, or how he did it. The question, then, turns upon whether or not this injury was the result of appellant's negligence, and upon this issue the jury found in respondent's favor. This case is not based upon alleged negligent treatment of an injury, but upon an alleged negligent act committed in the course of an operation whereby a perfectly sound tissue was injured, which negligent act resulted in a serious and, to some extent, permanent damage. Respondent was not required to prove negligence by direct and positive evidence. As was stated in the case of *Helland v. Bridenstine,* 55 Wash. 470, 104 Pac. 626,

"It was only necessary that she show a chain of circumstances from which the ultimate fact required

to be established is reasonably and naturally inferable.''

This is not a case of an injury such as a broken bone, in the healing of which a bad result is attained, which is remedied by a second operation. In the case at bar, it appears that the mastoid operation was successful. It is not contended that respondent continued to suffer from the infection which rendered the operation necessary. It, however, clearly appeared that, in the course of the performance of this operation, the facial nerve was injured. Without a second operation, it was impossible to tell just what had happened, although the result of the injury was plainly to be observed. It was not like a broken bone or any such injury, plainly apparent, or subject to the X-ray.

The operation which appellant performed did not call for any treatment of the nerve. Indeed, it is evident that touching the nerve to even the slightest degree was to be avoided, if possible. A condition of the bone might exist which would render necessary the removal of some of the bony process or structure immediately adjacent to the nerve. If this bone had become necrosed, it presented a situation requiring a high degree of skill and care in removing the same. Appellant testified that such a situation existed, and that some of this bone was diseased and crumbled while he was removing other necrosed bone in the course of the operation. He told respondent that he had ''accidentally uncovered the facial nerve.'' The jury, of course, were entitled to consider all of his testimony in connection with all the evidence—his statements as to what condition he found, and what he did, and his testimony as to what he had told respondent, together with her version of this conversation.

The fact that a second operation was necessary in order to correct a condition resulting from the first operation may be considered by the jury in such a case as this. Whether the second operation was required in order to correct an unsuccessful reduction of a fracture, as in the cases of *Sawdey v. Spokane Falls & Northern R. Co.,* 30 Wash. 349, 70 Pac. 972, 94 Am. St. 880; *Peterson v. Wells,* 41 Wash. 693, 84 Pac. 608; *Howatt v. Cartwright,* 128 Wash. 343, 222 Pac. 496, or was proper in order to attempt to better a condition manifestly resulting from the operation, although concerning a portion of the body which was not intended to be operated on in the attempt to cure the diseased condition which required the first operation, would seem to be immaterial, in so far as consideration by the jury of the fact that a second operation was required is concerned.

Appellant criticizes respondent's testimony to the effect that, after the operation, appellant had told her that he feared he had cut the facial nerve, because the second operation disclosed the fact that the nerve had not been cut, but had been injured only. It is evident that prior to the second operation, no one knew or could ascertain just what had happened to the facial nerve. It might have been severed. While the jury might well not have believed respondent's testimony in this connection, it is no wise incredible, and its weight was for the jury.

While the question is a close one, and not free from difficulty, we hold that, under the evidence, appellant was not entitled to a judgment in his favor as matter of law.

Appellant contends that respondent's counsel was guilty of misconduct which resulted in prejudice to appellant, and that appellant's motion to discharge the jury should have been granted; or, in any event,

that, because of the conduct of respondent's attorney, a new trial should have been granted.

During respondent's examination-in-chief, a question arose as to certain photographs. Upon appellant's counsel commencing what was probably to be an objection with the words, "Well, now," respondent's counsel remarked: "I withdraw it if you are going to be petty about it," which statement was stricken by the court. Later, upon cross-examination of one of appellant's witnesses, the court sustained an objection propounded by respondent's counsel on cross-examination, whereupon appellant's counsel asked "that the court admonish counsel," whereupon the following occurred:

"MR. BASSETT: That hurts you, doesn't it? MR. SMITH: Those remarks are improper, and counsel should be told they are improper. MR. BASSETT: It is the truth. MR. SMITH: Can counsel make such statements without being reprimanded, Your Honor? THE COURT: No; we have gone far enough. MR. BASSETT: I did not finish the question. THE COURT: Finish it then."

In the first instance referred to, the trial court struck from the record the objectionable statement made by counsel. In the second instance, appellant's counsel suggested that respondent's counsel should be reprimanded, but made no motion that the objectionable statements be stricken or that the jury be instructed to disregard them. The court did not, as it might well have done, strike the statements from the record, nor does it appear that respondent's counsel was then or later admonished or reprimanded for making the improper and objectionable aside remarks above quoted.

During the arguments to the jury, respondent's counsel made certain statements to which appellant objected, several of which statements were stricken by

the trial court. To others, objections interposed by appellant were sustained. Later, in the absence of the jury, appellant's counsel moved that the jury be discharged because of the unfair and prejudicial conduct of respondent's attorney. This motion the court denied, allowing an exception.

Had the trial court granted this motion, we could not, on appeal, have held that such a ruling was erroneous. But the trial court was in a very much better position than are we to pass upon such questions and to determine whether or not an atmosphere had been created which necessarily resulted in prejudice to one side or the other. Counsel's asides above quoted were particularly objectionable, and such remarks are entirely improper. The trial court, however, denied appellant's motion for a new trial, and, after careful consideration, we are of the opinion that it cannot be held that the conduct of respondent's counsel was so prejudical as to require reversal of the ruling of the trial court upon this phase of the case.

Finally, appellant contends that the trial court committed reversible error in refusing to give an instruction which he requested, embodying the law governing the responsibility of a surgeon for results following an operation. Examination of the instructions given by the trial court satisfies us that the substance of the instruction requested by appellant was given by the court, and that the jury was properly instructed as to the law applicable to the questions which were to be decided.

The record being free from reversible error, the judgment appealed from is affirmed.

Millard, C. J., Main, Geraghty, and Tolman, JJ., concur.