[No. 32092.   Department One.   November 6, 1952.]

VICTOR R. MULKA *et al., Appellants,* v. ROSWELL P. KEYES *et al., Respondents.*[1]

[1]Reported in 249 P. (2d) 972.

*Forrest & Rowles,* for appellants.
*Eggerman, Rosling & Williams,* for respondents.

DONWORTH, J.—This is an action for malpractice. Defendant Roswell P. Keyes is a physician and surgeon practicing his profession in Bellingham, as is the other defendant, his brother Howard. On June 18, 1947, after having diagnosed plaintiff wife's physical trouble as an ovarian cyst, Roswell operated on her for the purpose of removing it. Howard served as his assistant in the surgery.

In the course of the operation Roswell cut the patient's left ureter about two-thirds through. The ureter is a muscular tube whose function is to carry urine from the kidney to the bladder. Howard attempted to repair the injury by inserting a ureteral catheter in the ureter and suturing the cut edges. The repair was unsuccessful and another operation—to remove the left kidney—was performed by another surgeon July 22, 1947. Plaintiffs subsequently brought this action in which, so far as we need note here, they made three allegations of negligence:

(1) Cutting the ureter when such cutting was wholly unnecessary to proper conduct of the ovarian cyst operation; (2) failing to treat and repair the injury properly at the time of the operation; and (3) failing to treat and repair the

injury properly subsequent to the operation. Defendants' answers denied these allegations.

The action was tried in Whatcom county before a visiting judge from King county, sitting with a jury. At the close of plaintiffs' case each defendant challenged the sufficiency of the evidence as to him. The trial court denied the motion of Roswell and granted that of Howard, who was dismissed from the case. The jury subsequently returned a verdict for plaintiffs against Roswell.

Roswell filed a motion for judgment notwithstanding the verdict or in the alternative for a new trial. The court denied the first motion and granted the second. Plaintiffs have appealed from the order dismissing Howard C. Keyes as a defendant. See *Mulka v. Keyes,* 40 Wn. (2d) 919, 246 P. (2d) 834. By a separate notice of appeal they have appealed from the order granting Roswell P. Keyes a new trial.

We shall henceforth refer to plaintiff wife as if she were the sole appellant and to Roswell P. Keyes as if he were the sole respondent.

The material portion of the order granting the motion for a new trial reads as follows:

"IT IS FURTHER ORDERED that defendant's motion for a new trial be and the same is hereby granted upon the ground that substantial justice has not been done. Inherent in this conclusion are the following reasons:

"The slight evidence of negligence which was submitted to the jury left a basis for a verdict which was barely sufficient;

"Juror . . . [No. 3] failed to disclose on her voir dire examination a prejudice against the defendants;

"Plaintiffs' counsel made statements, which were made in the presence of the jury without necessity, relative to the rulings of the court tending to prejudice the jury against the defendant.

"These facts plus the speed of the verdict, a consideration of the entire record and proceedings in this case, as well as the appearance and demeanor of the witnesses upon the stand, convince this court that substantial justice has not been done."

In her first two assignments of error appellant challenges the sufficiency of these reasons and asks this court to reverse the order granting respondent's motion for a new trial and to remand the cause with direction to enter judgment on the verdict of the jury. Only in the event that we should decline to do this does she seek a review of her eight other assignments of error including a review and reversal of the order dismissing Howard C. Keyes as a defendant.

In *Coppo v. Van Wieringen,* 36 Wn. (2d) 120, 217 P. (2d) 294, we reviewed at length the situation then existing with reference to an appeal from an order granting a new trial where the trial court either stated no ground for its order or based it upon the ground that substantial justice had not been done. We there stated that our review in such cases was limited to the question whether the verdict of the jury was, as a matter of law, the only verdict that could be rendered. Unless we could so find, we held that such an order granting a new trial would not be disturbed except for manifest abuse of discretion. We recognized that the wide discretion accorded trial courts in granting new trials on the ground that substantial justice had not been done had the effect of dropping an "iron curtain" which cut off adequate review by this court to determine whether or not there was sufficient reason for the trial judge to set aside the verdict of the jury and grant a new trial. We suggested that there should be some means of obtaining more adequate review of such orders and we concluded as follows:

"Inasmuch as revisions of our rules and the rules of practice are under consideration, it is hoped by this opinion to focus the attention of the bench and bar upon the problem presented. There is no desire to interfere with the inherent right of a trial judge to grant a new trial, subject only to the limited review now possible, where the reasons for granting a new trial cannot be made a part of the record. On the other hand, there should be some way of securing a review of such an order when the trial judge's action is actually based upon the record. Any rule adopted, to be effective, would require that the trial judge state his reason or reasons for granting a new trial and, also, whether the order is based upon the record or upon facts and circum-

stances outside the record which could not be made a part thereof."

We thereafter promulgated Superior Court Rule 16, 34A Wn. (2d) 117, effective January 2, 1951, which had the effect of superseding Rem. Rev. Stat. (Sup.), § 399 (RCW 4.76-.020). We added as an additional ground for granting a new trial "That substantial justice has not been done." We also provided therein that

"In all cases wherein the trial court grants or denies a motion for a new trial, it shall, in the order granting or denying the motion, give definite reasons of law and facts for so doing."

With Rule 16 and our discussion of the problem in the *Coppo* case, *supra,* in mind we shall consider *seriatim,* in the light of the record in this case, the reasons given by the trial court in support of its order.

The trial court held, as a matter of law, that certain items of negligence had not been proved and instructed the jury that "the sole question for your consideration is the question of the skill and care used in using the methods employed." in the operation. In its memorandum opinion on respondent's motion for a new trial the court decided that it had erroneously withheld from the jury the issue of negligence in the selection of surgical methods employed (sharp or blunt dissection), saying:

"By reason of the court's erroneous ruling, substantial evidence was taken away from the consideration of the jury, and the slight evidence that the court submitted to the jury left a basis for a verdict which is, to my mind, barely sufficient. I am inclined to scrutinize a verdict in such a case as this with a great deal more care than if the jury had had more substantial evidence to pass on."

■ Parenthetically, we note here that the error which the court concluded it had committed was in favor of respondent who is the party seeking a new trial. Under the circumstances of this case, the reason given by the court is not adequate to support the granting of a new trial to him.

■ The sufficiency of the evidence to sustain a verdict is a matter which necessarily appears in the record. From

our review of the record we are convinced that there was substantial evidence from which the jury could find that respondent was negligent in cutting the ureter. It would serve no purpose here to review extensively the highly technical testimony of respondent, his brother and the medical experts called by each side. There was evidence from which the jury could have found that the ureter was cut while respondent, using the method of sharp dissection, cut into tissue which he had not first identified. There was also expert testimony that no surgeon exercising a proper degree of care and skill would cut into tissue which he had not identified and that by first lifting up and identifying small segments of tissue and adhesions a surgeon could properly use the method of sharp dissection with less risk of damage to the ureter.

Respondent's report of what was done in the operation, made immediately after its conclusion, read as follows:

"Mid rectus incision, low. Pelvis and abdomen explored. The sigmoid resected from the large ovarian cyst. The ovarian pedicle was resected & lig. with double No. 0 chromic *On resecting left ovary from broad lig. [ligament] left ureter cut.* The cyst was resected and then there was an anastomostosis of cut ends of the ureter with triple 0 interrupted silk. over a ureteral catheter. The cut edges of the broad lig. [ligament] peritonealized. . . ." (Italics ours.)

At the trial respondent and his brother maintained that the ureter was cut while dissecting what they described as "the inflammatory mass," of which the ovarian cyst was a part, from the sigmoid colon. This testimony was directly in conflict with respondent's report of the operation which, respondent claimed, was incorrectly written by the typist.

The jury could have found from the evidence that cutting the ureter while dissecting the ovary from the broad ligament was more indicative of negligence than would be cutting the ureter while dissecting the cyst from the sigmoid colon.

There were other material variances between respondent's operative report, his testimony on pre-trial examination and

his testimony at the trial. The credibility of respondent thereby became an important issue in the trial.

As we stated in *Marlowe v. Patrick,* 181 Wash. 647, 44 P. (2d) 776:

"The jury were not required to believe appellant's [defendant's] uncorroborated testimony to the effect that the bone protecting the nerve had become necrosed and crumbled away during the operation, exposing the nerve to inadvertent injury."

We, therefore, conclude that the trial court's first reason for granting a new trial as stated in its order is without foundation.

Respondent's motion for a new trial was made upon all nine grounds stated in Rule 16, *supra,* but was argued on only two: "1. Failure to accomplish substantial justice. 2. Misconduct of Juror . . . [No. 3]."

In its memorandum opinion the court commented upon the second ground as follows:

"I am also disturbed in this case by the affidavit showing that one of the jurors prior to the trial had stated in substance that she would not take anyone to the Keyes clinic. This affidavit is not denied. The juror in question admits that the case was discussed, but fails to state what the discussion was, and merely says that she did not recall such a remark in the discussion. I cannot help but feel that if she had made no remark of this nature and had been falsely accused of having said this by her acquaintance, she would not have hesitated to make a flat denial. The court would not grant a new trial on this instance alone. The court, however, has in mind that this instance shows a probable prejudice of one of the jurors."

We are of the opinion that misconduct of a juror is either of such character as to justify granting a new trial on that specific ground (Superior Court Rule 16 (2)) or it is not prejudicial to the party moving for a new trial. We have examined the affidavit and counter affidavits relating to the claimed misconduct of the juror. We have also reviewed the record as to questions asked of the juror on the voir dire by the court and each counsel. We conclude that the trial

court exercised a sound discretion in declining to grant a new trial on the ground of misconduct of this juror. The court erred in stating in its order, as a reason for its conclusion that substantial justice had not been done, that the juror had failed to disclose a prejudice against respondent.

Review of the court's third reason for concluding that substantial justice had not been done requires that we set forth remarks of the court and counsel made in the absence of the jury at an evening session during the argument on the motions for dismissal:

"THE COURT: I feel that you have some healthy tissue that ordinarily should not be cut in one of these operations. It was cut. And you have a doctor the jury can determine told inconsistent stories about it. You also have the fact that he located the ureter going into this mass before. I think I will let it go to the jury on that basis alone. I think I will instruct the jury that there is no negligence in choice of method. I will instruct them as a matter of law that negligence in post-operative treatment is not shown sufficiently to be any more than speculative, that is, they can't find it. However, as long as this doctor is in, he is responsible for all results that may have occurred by negligently cutting this ureter. MR. ROSLING: That is true. THE COURT: Whether if there is any post-operative care, lack of care, contributed to the result, I think it is pure speculation; but as to him, he is responsible anyway. . . .

"THE COURT: I am ruling as a matter of law that the proximate connection is not shown as a probability for the jury to pass on, it is purely speculative, as to whether any difference in the size of the catheter would have made any difference, or whether or not taking it out of the bladder would have made any difference. Nobody could tell from this evidence whether or not that contributed to the repair failing to heal properly. I will grant the motion of Dr. Howard Keyes as to a dismissal as to him. I will deny the motion of Dr. Roswell Keyes for dismissal, except I will not submit the items of negligence on the repair and subsequent treatment."

The next morning (November 29, 1951) when the trial resumed the following occurred in the presence of the jury:

"THE COURT: Ladies and gentlemen of the jury: Upon motion of the defendant, Dr. Howard C. Keyes has been

dismissed by the Court from this case. The Court has also striken from the complaint certain allegations of negligence—

"MR. ROWLES: May I interrupt, Your Honor? Is the Court serious in what it is saying at this moment? I understood that it was simply the one doctor—

"JUROR No. 10: Speak up a little.

"MR. ROWLES: I am speaking to the Judge. I understood that Your Honor said that as of this time he was not prepared to submit certain things to the jury, but certainly the plaintiffs are entitled to rely on anything which may come out during the entire case. That is not a separate cause of action in any sense of the word, and the mere fact that at this time the Court doesn't feel that certain items in the complaint, in the one cause of action in the complaint, have been proved to the Court's satisfaction as matters for the jury, doesn't mean that the Court is entitled to simply lift out of our complaint portions thereof. Those were not separate causes of action and I do not see how they can be stricken by the Court at this time. At the conclusion of all the evidence, of course, the Court can rule through his instructions that certain issues may not be considered by the jury, but I think it would be highly improper for the Court to lift out of our complaint section by section anything which the Court felt at this time had not been proven sufficiently to go to the jury. *That would be contrary to every rule of proceeding or law that I have ever heard of.*

"THE COURT: Your exceptions are noted.

"MR. ROWLES: The Court is still of the opinion that it may take piecemeal a single cause of action and lift parts of it out?

"THE COURT: To the extent that you have, in the opinion of the Court, not established certain grounds of negligence, they will be removed from the jury at this time and the defendant will be limited and not allowed to introduce any evidence relative thereto. The Court has held as a matter of law that on the question of the items of negligence alleged in the complaint in negligently repairing or attempting to repair the injured ureter and negligent after care, that such items of negligence will be removed from the consideration of the jury, and that the defendant will not be allowed to introduce any evidence against the evidence that has been introduced in that regard, and that the jury will be now instructed to disregard any evidence received relative to the contention that there was negligence in repairing the ureter

or negligent after care of that repair. The Court's reasons for deciding that portion as a matter of law is that there is in the opinion of the Court not enough evidence to go to the jury to show that the failure of the ureter to heal was due to any of the criticized procedure, and the defendant will not be permitted to introduce any evidence to rebut the evidence in that regard for the reason the Court has instructed the jury to disregard the evidence as now has been received.

"MR. ROWLES: At this time we move for a mistrial, Your Honor, on the basis of the Court's comments to the jury just now and upon the restrictions placed upon counsel for the plaintiff by the Court upon the erroneous ruling of law just made.

"THE COURT: Motion is denied and exception allowed. You may proceed." (Italics ours.)

Counsel for respondent made no objection to the foregoing remarks of appellant's counsel nor did he request that the jury be instructed to disregard them. Neither did the court admonish counsel or direct the jury to disregard his remarks. This incident was never mentioned by the court during the remainder of the trial.

At the first argument had on respondent's motions for judgment n.o.v. or in the alternative for a new trial the court stated:

"THE COURT: Well, frankly I will state my views about this matter now. I'm absolutely convinced in my own mind that I committed no error in this trial unless it was possibly against the plaintiffs. There was one point there that was a very close question. It has now become moot, and I think with the Judge's mind like it is to start with that Mr. Rosling has a very laboring oar in this matter. . . ."

In its memorandum opinion signed December 21, 1951, the court set out the remarks (heretofore quoted) made by counsel for appellant on the morning of November 29, 1951, in objecting to the court's instructing the jury that certain allegations of negligence had been removed from their consideration. The court emphasized the sentence which we have italicized and stated:

"The remarks made by counsel in the presence of the jury should have been said at the session called for that purpose

the night before in the absence of the jury. The manner of counsel for the plaintiff was highly dramatic, and he gave a very convincing impression that he was genuinely heart-broken by the unusual injustice being done him by the court. I do not mean to convey that I have the opinion that counsel staged this for the purpose of its effect upon the jury. However, if he had deliberately done so, it would have made no difference. The court is convinced that the harm was done. Counsel for the defendant was from Seattle and employed no local counsel. Unfortunately, the court was also from Seattle. I cannot help but feel that the jury from that time on in the case steadfastly felt that the Seattle judge, in ruling in favor of the Seattle lawyer, had made a ruling never heard of before in a court of justice."

We do not find from the court's ruling upon the motions for dismissal at the evening session an expression of his intention to instruct the jury *the next morning* that various allegations of negligence had been withdrawn from their consideration. When the court did so instruct the jury appellant's counsel was understandably surprised. Assuming that it was proper for the court so to do at that stage of the trial (such instructions are usually given at the close of the case), there is nothing in the record to indicate that the remarks addressed to the court by appellant's counsel could have had any prejudicial effect upon the jury.

The good faith of appellant's counsel in stating his objections is not questioned. Of course, the manner of his stating them is a matter which does not appear in the record. But the remarks of the court made later in the trial and at the argument on the motion for a new trial (above set out) strongly suggest that the court attached no significance to the incident at the time it took place. Respondent did not urge as a ground for granting the motion for a new trial any misconduct of appellant's counsel. The incident was mentioned for the first time in the trial court's memorandum opinion which was filed more than three weeks after it occurred.

In its memorandum opinion the court made reference to the fact that both the judge and respondent's counsel were from Seattle and implied that that fact considered in con-

nection with the remarks of appellant's counsel prejudiced the jury against respondent.

We note that there is nothing in the record to show that the jury was informed as to the residence of the trial judge or respondent's counsel; nor does the memorandum opinion state that the jury was aware that they both resided in Seattle.

■ Notwithstanding the fact that the manner of appellant's counsel in stating his objections and its effect upon the jury are matters which cannot appear directly in the record, we are of the opinion that the prejudicial effect, if any, upon the jury was negligible if it escaped attention of the court and respondent's counsel until the time the memorandum opinion was written, more than three weeks after the trial. We, therefore, conclude that the third reason has no sound foundation in fact.

■ The trial court commented on the brevity of the jury's deliberation. The jury retired to deliberate at 4:10 p. m. and returned its verdict at 9:05 p. m. During part of this time they were at a hotel eating their dinner. There is nothing unusual in the jury's arriving at a verdict in five hours, even with time out for dinner. Under the court's instructions, which were only twelve in number, the jury had only one issue to determine: Had respondent been negligent in cutting the ureter?

The trial consumed most of four days. By reason of the court's instructions, however, most of the first three days' testimony was removed from the jury's consideration. In the light of these facts we cannot agree with the trial court that the verdict was returned in such short time as to indicate that the jury had not sufficiently considered the evidence or the instructions. These facts do not support the court's conclusion that substantial justice had not been done.

■ The next reason stated by the court for its conclusion that substantial justice had not been done is "a consideration of the entire record and proceedings in this case."

The purpose in adopting Rule 16, *supra,* requiring that the trial court in its order granting a new trial state definite

reasons of law and facts for so doing, was to enable this court to discharge more adequately its constitutional duties as an appellate court. Prior to the adoption of Rule 16, as we recognized in the *Coppo* case, *supra*, an order granting a new trial on the ground that substantial justice had not been done resulted in the dropping of an "iron curtain" which shut off any effective review by this court.

We have no way of knowing whether the "entire record and proceedings in this case" have been brought before us in the statement of facts and the transcript. The trial court has certified, however, that the statement of facts contains "all the *material* facts, matters and proceedings occurring in said cause and not already made made a part of the record therein, necessary to a determination of the points involved." (Italics ours.) We find nothing in the record before us which evidences a failure of substantial justice.

The last reason given by the court in its order is "the appearance and demeanor of the witnesses upon the stand" —a matter which is clearly outside the record. We shall consider this reason, however, in the light of the record before us.

In its memorandum opinion the court made no mention of the appearance or demeanor of witnesses as bearing upon its conclusion that there had been a failure of substantial justice. After reviewing the claimed misconduct of the juror and what the court conceived to be prejudicial misconduct of appellant's counsel, the court said:

"The court also considers the conduct of counsel in the presence of the jury relative to the rulings of the court, the speed of the verdict, and the entire record in the case. Based on all of this, the court is of the opinion that substantial justice has not been done."

The only mention we find of the demeanor of witnesses (outside of the court's order) appears in respondent's brief submitted to the trial court on appellant's motion for judgment on the verdict. This brief is included in the transcript and concludes as follows:

### "Form of Order

"We have redrafted and submit herewith a form of order granting the motion for new trial. We have redrafted our original form of order to include a recitation of the continuance of December 8, 1951 to recite the denial of the plaintiffs' motion to strike the defendant's motions for judgment n.o.v. and for a new trial and also to recite the denial of the plaintiffs' motion for judgment on the verdict notwithstanding the Memorandum Decision of the Court. The balance of the order remains as originally presented. Counsels' criticism of the reference to a consideration of the entire record is not well founded. *The Memorandum of Opinion, dated December 21, 1951 specifically refers on the last page to the fact that the Court has considered the entire record of the case. Consideration of all of the proceedings of a trial obviously includes the demeanor and conduct of witnesses.* Inflection of voice of counsel and witnesses and matters of a similar sort which do not appear in the written transcript. It is because such matters are within the knowledge of the trial court and cannot be within the knowledge of the Supreme Court that our Supreme Court has so frequently referred to the rule that matters resting within the discretion of the trial court will not be set aside in the absence of a showing of an abuse of discretion." (Italics ours.)

■ Reference in the memorandum opinion to the "entire record in this case" does not include the appearance and demeanor of the witnesses. It is significant that no mention was made in the memorandum opinion of the appearance and demeanor of witnesses; this reason is first stated in the order granting a new trial entered six weeks after the close of the trial.

The record before us strongly suggests that the inclusion in the order of the reference to "the appearance and demeanor of the witnesses" was made at the instance of respondent's counsel.

In any event, the court has failed to state in its order definite reasons why the appearance and demeanor of any witness was prejudicial to respondent or in what manner his appearance and demeanor had that effect upon the jury. In the absence of such definite reasons we cannot hold that Rule 16 was complied with.

As we have already stated, the purpose of the rule was to enable this court to review the trial court's action in granting a new trial. If a mere reference in the order to "the appearance and demeanor of the witnesses" without any concrete statement of what the trial court had reference to or how this factor had any effect upon the verdict be held to be a compliance with Rule 16, then we are still confronted with an "iron curtain," as stated in the *Coppo* case, *supra,* and the object in adopting the rule is completely thwarted. We are of the opinion that the last reason stated in the order granting a new trial is a nullity.

Respondent argues that Rule 16, *supra,* does not require that the reasons which cause the trial court to conclude that substantial justice has not been done must be legally sufficient to warrant the granting of a new trial on one of the other eight specific grounds set forth in the rule. Assuming that this argument has merit, we consider the reasons stated in the court's order in this case to be insufficient, viewed either severally or collectively, to warrant granting respondent a new trial.

From the foregoing review of all the trial court's reasons for granting a new trial we are of the opinion that they are, *in toto,* insufficient to support the conclusion that substantial justice had not been done in this case.

Respondent took no exception to the court's instructions. Appellant presented substantial evidence to sustain a jury's verdict in her favor. The jury was the sole judge of the credibility of the witnesses and the weight to be attached to the testimony of each.

We find nothing in the reasons given by the trial court in support of its order which shows that respondent did not have a fair trial. Under these circumstances the verdict must stand. Therefore, we are compelled to hold that the trial court abused its discretion in granting respondent a new trial.

The order granting Roswell P. Keyes a new trial is accordingly reversed and the cause remanded with directions to enter judgment for appellants upon the jury's verdict.

The order dismissing the action as to Howard C. Keyes is affirmed.

SCHWELLENBACH, C. J., MALLERY, GRADY, and WEAVER, JJ., concur.