[No. 32731. *En Banc.* October 22, 1954.]

RICHARD F. JOHNSON *et al., Appellants*, v. TED HOWARD *et al., Respondents.*[1]

[1]Reported in 275 P. (2d) 736.

*Kennett, McCutcheon & Soderland,* for appellants.

*Rode, Cook, Watkins & Orth,* for respondents.

HAMLEY, J.—Plaintiffs brought this action to recover damages in the sum of $81,860.26, alleged to have been sustained in an automobile accident. The jury returned a verdict for plaintiffs in the sum of $37,092.95. The trial court denied defendants' motion for judgment n.o.v., but granted their alternative motion for a new trial. Plaintiffs appeal.

Appellants are husband and wife. The accident occurred at 5:45 p. m., on January 8, 1952, at the intersection of northeast Eighth street and 108th avenue northeast, near Bellevue, Washington. Immediately prior to the accident, appellants were driving in a westerly direction on northeast Eighth street, which is an arterial highway. Respondent Ted Howard was traveling in the northerly direction on 108th avenue northeast, which is not an arterial highway.

Howard failed to stop his automobile before entering the intersection, and the collision resulted.

As required by Superior Court Rule 16, 34A Wn. (2d) 117, there is set forth in the order granting a new trial definite reasons of law and fact for so doing. The assignments of error bring into question each of the reasons so given.

We start with the recognized principle that an order granting or denying a new trial is not to be reversed, except for an abuse of discretion. *Huntington v. Clallam Grain Co.*, 175 Wash. 310, 27 P. (2d) 583. This principle is subject to the limitation that, to the extent that such an order is predicated upon rulings as to the law, such as those involving the admissibility of evidence or the correctness of an instruction, no element of discretion is involved. *Grant v. Huschke*, 70 Wash. 174, 126 Pac. 416 (overruled on another point in *Larson v. Seattle*, 25 Wn. (2d) 291, 171 P. (2d) 212); *Hayes v. Sears, Roebuck & Co.*, 34 Wn. (2d) 666, 209 P. (2d) 468. A much stronger showing of an abuse of discretion will ordinarily be required to set aside an order granting a new trial than one denying it. *McUne v. Fuque*, 42 Wn. (2d) 65, 253 P. (2d) 632.

One of the reasons given for granting the motion for a new trial in this case, and the one which seems to be primarily relied upon, is that the verdict was so grossly excessive as to unmistakably indicate that it was the result of passion or prejudice. The granting of a new trial for this reason is authorized by Rule 16 (5), *supra*.

Prior to January 2, 1951, an order granting a motion for new trial on this ground would not have been reversed if there had been a case for the jury and any evidence on which the jury could have reached a verdict different from the one rendered. *Coppo v. Van Wieringen*, 36 Wn. (2d) 120, 217 P. (2d) 294. The reason we would not have reversed under such circumstances was, as stated in the *Coppo* case, that

". . . our cases require us to assume (the trial judge having said that substantial justice had not been done and that the damages were inadequate—and either would be sufficient to require the assumption) that the trial judge

was influenced by conditions existing and circumstances occurring during the trial which could not be made part of the record; and, having made that assumption and having found that there was a case for the jury and that different verdicts as to damages were possible under the evidence, we must perforce say that there was no manifest abuse of discretion by the trial court and that his orders granting new trials are affirmed." (p. 141)

On January 2, 1951, Rule 16, *supra*, became effective, requiring the trial court, in the order granting or denying a motion for a new trial, to give "definite reasons of law and facts for so doing." The prime purpose of this amendment was to lift the "iron curtain" (as we expressed it in the *Coppo* case) which prevented effective appellate review in cases where a new trial had been granted in jury cases on the ground of inadequate or excessive verdict or insufficiency of the evidence. See *Mulka v. Keyes*, 41 Wn. (2d) 427, 249 P. (2d) 972.

It is no longer necessary for us to *assume* that, where the trial judge has said that the damages were excessive (or inadequate), he was influenced by conditions existing and circumstances occurring during the trial, which could not be made part of the record. If he was actually so influenced, he is to say so in giving his reasons for granting a new trial. Where he does not say say so, and even though he gives as an additional reason that substantial justice has not been done, it will be assumed that the justification for the action taken is to be found in the record. See *Coppo v. Van Wieringen, supra*, page 140.

The complaint states three causes of action. The first, as amended at the opening of the trial, is for personal injuries suffered by appellant husband (Johnson), and for special damages. The second is for personal injuries suffered by appellant wife. The third is for destruction of and damage to clothing, personal effects, and an automobile.

The trial court's determination that the jury award was so excessive as to unmistakably indicate passion or prejudice is directed against the awards under the first and third causes of action. Neither in the oral decision nor in the

order granting the new trial is any question raised concerning the second cause of action, in which $35,000 was prayed for and $10,000 was awarded.

Turning to the first cause of action, the jury award was $26,259.52. Counsel for appellants had, in his argument to the jury at the close of the case, reduced the demand for damages as a result of personal injuries under the first cause of action from $45,000 to $25,000. It is therefore apparent that the verdict represents an allowance of $25,000 for personal injuries, and an allowance of $1,259.52 for special damages.

The testimony tending to support the $25,000 award for personal injuries, together with the reasonable inferences therefrom, may be summarized as follows: Johnson was forty-nine years of age at the time of the accident. He had a life expectancy of twenty-three years. He had been a gardener for thirty-two years, and his health prior to the accident had been "very good." The collision caused Johnson's car to overturn on a fire hydrant, and both Johnson and his wife were rendered unconscious. Dr. Gordon R. Dempsay examined him on the night of the accident and found him to be suffering from "considerable contusions, [with a] more or less bruising effect." He was not hospitalized overnight, and went to work the following day. He was not able to work, however, and stayed only one hour. For the next six weeks, Johnson went to work each day, but, being unable to do his job, stayed for only one hour a day.

As time went on, Johnson's condition failed to improve. His neck and back continued to ache, and his heartbeat was well above normal. Two months after the collision, Dr. Dempsay sent Johnson to Dr. Leo J. Rosellini. It was then discovered that Johnson was suffering from a diffuse toxic goiter. He had lost twenty-five pounds in weight, showed marked nervousness, excessive generalized perspiration, and marked generalized weakness, especially in the calves of his legs.

Dr. Rosellini treated the patient for three months to prepare him for surgery. In June, 1952, he removed Johnson's

thyroid gland. Two doctors testified that Johnson's thyroid condition was caused by the injuries received in the collision. Johnson was hospitalized for six days following the operation, and was convalescent for three weeks thereafter. Johnson's condition at the time of the trial was shown to be as follows: Marked lordosis of the low back; a tilt of the neck column to the left; limitation of neck movement in forward bending; roughening of the disc spaces between cervical vertebrae numbers six and seven, indicating a sprain or whiplash injury; heartbeat above normal in spite of the thyroidectomy. Johnson testified that he suffers from pain in his back, neck, and head. He is unable to sleep on his back. His left arm movement is restricted by pain.

Johnson is presently taking physiotherapy treatments. These treatments consist of neck stretching by means of a halter, electrical treatments, certain exercises for his neck, and manipulation of his neck. Dr. Gordon Blake O'Neil testified that Johnson's injuries were permanent, and would produce pain and discomfort in the future. Dr. O'Neil estimated Johnson's disability at the time of the trial at fifteen per cent.

There was no allegation or proof that Johnson had lost any income prior to the trial by reason of the injuries he had sustained. He had worked as gardener for Norton Clapp for fourteen years prior to the accident, and continued in this employment at the time of the trial. However, it was Johnson's testimony that he was, at the time of the trial, unable to work as before the accident, and that after each work day he suffers from extreme fatigue.

The only medical expert produced by respondents was Dr. Harold E. Nichols, an X-ray diagnostician. He had never personally seen or examined either of appellants, and had obtained from them no history as to their complaints. At the request of respondents, appellants submitted themselves to Dr. J. H. Berge for examination. Respondents did not call Dr. Berge as a witness. Counsel for appellants pointed out this fact to the jury in his closing argument. Respondents did not cross-examine Dr. Rosellini, nor did they cross-

examine Johnson regarding the nature of his injuries or the extent of his disability.

The $25,000 award for personal injuries to Johnson was in the exact amount for which appellant's counsel asked in his closing argument.

The fact, however, that the jury awarded the full amount demanded is not in itself an indication of passion or prejudice. Such a conclusion would be particularly unjustified here, because the award was $20,000 less than the amount prayed for in the complaint and submitted to the jury in the first instruction. In his closing argument, counsel for appellants voluntarily reduced the demand on this item from $45,000 to $25,000. The jury could well have concluded that counsel was being fair and candid in so reducing the demand, and that the evidence fully supported the lesser amount.

It is our opinion that, in so far as the record discloses, the jury award of $25,000 for personal injuries to Johnson was supported by substantial evidence.

In connection with the asserted excessiveness of the verdict, however, the order makes reference to one factor which does not appear in the record. This is the statement to the effect that the trial court's conclusion that the verdict was excessive was, among other things, "based upon the *appearance, demeanor* and testimony of each of the parties plaintiff . . ." (Italics ours.)

The appearance and demeanor of the two appellants were, of course, as observable by the jury as by the judge. The jury had been instructed that they were the sole and exclusive judges of the evidence and of the credibility of the witnesses, and of the weight to be attached to the testimony of each. They were told that, in weighing the testimony of a witness, the jury had the right to consider his demeanor upon the witness stand and his apparent fairness and candor, or lack of fairness and candor. The jury presumably followed this instruction and gave appropriate consideration to the demeanor of all the witnesses, including appellants.

■ The trial court has failed to state in what way the appearance and demeanor of appellants demonstrated that the award was excessive, or how their appearance and demeanor prejudiced respondents. In the absence of such definite reasons, we must hold that this is an insufficient basis for concluding that the award was so excessive as to indicate passion or prejudice. See *Mulka v. Keyes, supra,* page 440.

■ Our review of the evidence summarized above and the other considerations which have been mentioned convince us that the jury award of $25,000 for personal injuries sustained by Johnson was not so excessive as "unmistakably" to indicate that the verdict "must" have been the result of "passion or prejudice."

We turn now to the portion of the jury award under the first cause of action which represents an allowance for special damages.

■ In the closing argument of counsel for appellants, the jury was told that appellants had proved special damages in the amount of $1,194.52, under the first cause of action. In support of this statement, counsel itemized certain bills, but, apparently through inadvertence, omitted three items totaling ninety-five dollars. Had these three items been included, the special damages would have aggregated $1,289.52.

The jury verdict on the first cause of action was $26,-259.52. Assuming that the jury allowed the full amount of $25,000 for personal injuries, it is apparent that it awarded $1,259.52 for special damages. This is sixty-five dollars more than the erroneous computation submitted to the jury by appellants' counsel, but thirty dollars less than the $1,-289.52 for which proof was submitted.

Under these circumstances, we do not believe that the award of sixty-five dollars more than the erroneous figure submitted by appellants' counsel in his closing argument is an unmistakable indication that the verdict must have been the result of passion or prejudice.

■ The third cause of action is the only other cause of

action concerning which there was a finding of excessive damages. The prayer of the complaint, as amended at the opening of the trial, demands an award in the sum of $833.43 for destruction and damage to property. The jury awarded the full amount prayed for.

The only criticism which the trial court and respondents have to make concerning this award is that one of the items going to make up this figure—a twelve-dollar towing charge —was not proved. This is conceded by appellants.

No motion was made to reduce the award by this amount. In our opinion, this twelve-dollar discrepancy between the proof and the award on this item of damage does not indicate passion or prejudice.

█ It is our conclusion that the trial court abused its discretion in granting a new trial on the ground that the damages were so excessive as unmistakably to indicate that the verdict must have been the result of passion or prejudice.

A second reason which the trial court gave for granting the motion for a new trial was "misconduct of the plaintiffs' counsel." This reason is encompassed within Rule 16 (2), *supra*, which provides that a new trial may be granted for "misconduct of prevailing party .. . ."

The order granting a new trial quotes from the record the instances in which, according to the trial court, appellants' counsel was guilty of misconduct. These are set forth in the following colloquy, which occurred during counsel's first argument to the jury at the close of the case:

"MR. KENNETT: *Now, why are we talking about negligence here? Why is this case being defended here? I suggest only in an attempt to confuse the jurors.* MR. ORTH: I will object to the remark of counsel and move it be stricken. THE COURT: No, I see nothing erroneous in it. I will let the statement stand. MR. ORTH: With respect to why it is being defended. That is the matter I am referring to. It seems to me everybody is entitled to a day in court. THE COURT: That is true, and as to the extent, why it is being defended, every time a party is called into court, he has a right to present that defense which he thinks he is honestly entitled to present. To that one statement, it may be elimi-

nated. The jury is instructed to disregard it. Mr. KENNETT: *I ask you jurors from what you have heard on the witness stand and what you have observed in this courtroom if you do think this case is being honestly defended, that his Honor has told you they have a right to an honest defense.* Mr. ORTH: I will object to that remark of counsel and the inference contained therein, particularly the remark as to whether it is being honestly defended or not. That is absolutely out of the record. It's highly prejudicial, and as a matter of fact, I would like to address the court at this time in the absence of the jury if I may. THE COURT: Members of the jury, you will kindly retire to your jury room. And do not discuss this case. (The jury retired.)'' (Italics ours.)

After the jury had retired, respondents moved for a mistrial because of the asserted impropriety and prejudicial nature of the remark as to whether or not the case was being honestly defended. Argument ensued, after which the trial judge stated that the remarks in question were uncalled for, but that the impropriety was not serious enough to require a mistrial. The motion was therefore denied, and, upon the return of the jury, they were instructed to disregard the remarks. For convenience in discussing the matter, we have italicized the two questioned remarks of counsel for appellants.

It will be observed that respondents' objection to the first remark was limited to the question which was asked as to why the case was being defended. The reason why appellants' counsel asked this question is revealed by the record. In their answer, respondents had denied negligence, and this defense had been submitted to the jury in instruction No. 1, summarizing the pleadings. Yet, when respondent driver was on the witness stand, he testified that he failed to stop before entering the arterial highway; that he did not see appellants' automobile until it was within approximately thirty-five to fifty feet of him; and that he did not see the arterial stop sign, though it was in place fifty-one feet south of the point where he entered the arterial.

It will be noted that the trial judge at first saw nothing erroneous in the first italicized remark, although he later changed his mind. In any event, the only relief requested

by respondents was that the remark be stricken. The trial judge granted this request and, in addition, instructed the jury to disregard the remark.

The second remark which has been italicized was that concerning the honesty of the defense. This was the only statement which was made the subject of a motion for mistrial. It will be observed that counsel for appellants made this particular observation after the trial court had told the jury that respondents had the right to present that defense "which he thinks he is honestly entitled to present." It will be further observed that appellants' counsel, in responding to the trial judge's remark, did not state that the case was not being honestly defended, but rather presented this as a question for the jury to decide.

Were these remarks so patently objectionable and irreparably prejudicial that their utterance entitled respondents to a new trial? Apparently the trial court did not believe so when it denied the motion for mistrial.

We agree with the trial court that the remarks were not proper under the facts of the case. We do not believe, however, that they were so flagrant, persistent, or ill-intentioned, or their wrong so obvious and their evil results so certain that the trial court's instruction to disregard the remarks could not neutralize their effect on the jury. The criterion always is, as we said in *Slattery v. Seattle,* 169 Wash. 144, 13 P. (2d) 464:

"Has such a feeling of prejudice been engendered or located in the minds of the jury as to prevent a litigant from having a fair trial?" (p. 148)

We think that the instruction was adequate, and that the incident was not a sufficient reason for granting a new trial. See *McDonough v. Pacific S. S. Co.,* 170 Wash. 658, 16 P. (2d) 1052.

The third and final reason which the trial court gave for granting the motion for a new trial was that "substantial justice has not been done." The granting of a new trial for this reason is authorized by Rule 16 (9), *supra.*

In support of this reason, the order enumerates several

incidents or factors which will be discussed *seriatim*. The first of these, stated in the words of the order, is as follows:

"During the course of the interrogation of the jurors on at least three occasions much was made of injuries or damages having been sustained by the individual jurors, which resulted in adjustment of their losses by insurance companies, and one juror had been involved in litigation where he stated that he regretted the fact that the subject of insurance could not be mentioned at the trial of his case."

The "juror" last referred to in the above-quoted statement did not sit as a juror in this case. The remark which this prospective juror made was elicited by counsel for respondents. This prospective juror later stated that he would be prejudiced in favor of respondents. Respondents challenged him for cause, and, over the objection of appellants, the challenge was sustained. Another prospective juror who stated that he had collected damages through his insurance company in connection with two collisions likewise did not sit as a juror in this case. He was excused on appellants' peremptory challenge.

Three prospective jurors who mentioned insurance on *voir dire* sat on the jury. In the case of two of these jurors, the remark was made during examination by respondents' counsel. In the third case, the juror, while being examined by appellants' counsel, unresponsively answered that he had settled a property damage claim "through the insurance companies."

In all three cases, the remark was to the effect that the claim had been settled by the insurance company. Thus, the net effect of the remarks may have been prejudicial to appellants, rather than to respondents. Such remarks may have given rise to the inference that, since appellants' claim had not been settled, it was either an unfair claim or there was no insurance. There was no motion for mistrial in connection with any of these incidents.

In view of the foregoing, we are of the opinion that the references to insurance during *voir dire* are insufficient to support the conclusion of the trial court that substantial justice had not been done.

The second incident referred to in the order as supporting the finding that substantial justice had not been done, is the following remark made by counsel for appellants during his argument to the jury:

"His Honor has told you that you can observe the demeanor of witnesses. Did any of you observe the demeanor of Mr. Palmer yesterday on the witness stand, and as he walked down and sat in the front row and read a magazine the rest of the time he was here? You have a right to consider his disinterest in the matter. It's part of his demeanor."

No objection of any kind was made to this argument concerning the demeanor of the witness Palmer. No motion was made concerning it.

An almost identical remark was made by counsel for respondent in *Gephart v. Stout,* 11 Wn. (2d) 184, 118 P. (2d) 801. We there held that the remark was not improper, and that it would be "farfetched" to conclude that such a comment would lead jurors to assume that the opposing party carried liability insurance. See, also, *Carmody v. Trianon Co.,* 7 Wn. (2d) 226, 109 P. (2d) 560; *Cox v. Polson Logging Co.,* 18 Wn. (2d) 49, 138 P. (2d) 169.

In our opinion, the quoted comment does not tend to support the conclusion that substantial justice had not been done.

A third factor mentioned in the order in support of the conclusion that substantial justice had not been done has to do with the relatively short period of time the jury considered the case before returning their verdict. The jury returned its verdict two hours and nineteen minutes after the case was submitted to them.

While the trial had lasted four days, the issues were relatively simple. The questions of negligence and proximate cause, while submitted to the jury, were not even discussed by respondents' counsel in his argument to the jury. The issue of contributory negligence was argued, as was also the question of damages.

The length of time devoted to jury deliberations is not a reliable guide to the measure of justice which has been

achieved. In our opinion, the fact that the jury here returned a speedy verdict does not support the court's conclusion that substantial justice had not been done. See *Broxson v. Robinson,* 143 Wash. 1, 254 Pac. 252; *Mulka v. Keyes, supra,* page 438; *Mellis v. Merritt,* 44 Wn. (2d) 181, 265 P. (2d) 1058.

No other reason is set forth in the order in support of the conclusion relative to substantial justice, unless it is to be found in the words "based upon the entire proceedings in this case."

The trial court has certified that the statement of facts contains all the material facts, matters, and proceedings occurring in the cause and not already made a part of the record therein. If something occurred during the proceedings (in addition to the matters already discussed) which tended to deny respondents substantial justice, it therefore could and should have been referred to in the order. In the absence of such specification, the reference to "the entire proceedings" does not tend to support the conclusion that substantial justice had not been done. *Mulka v. Keyes, supra,* page 438.

It is our conclusion that, considered separately or together, the reasons set out in the order do not warrant the granting of a new trial. It was therefore an abuse of discretion to grant a new trial on the grounds indicated.

Respondents argue further, however, that they are entitled to a new trial for additional reasons urged upon the trial court but not adopted by that court in its order granting a new trial.

Appellate review of such additional reasons was permissible prior to the adoption of Rule 16, *supra,* effective January 2, 1951. See *Larson v. Seattle,* 25 Wn. (2d) 291, 171 P. (2d) 212; *Hayes v. Sears, Roebuck & Co.,* 34 Wn. (2d) 666, 209 P. (2d) 468.

Rule 16 provides that, in granting or denying a motion for a new trial, the court shall give definite reasons of law and fact for so doing. In our view, adoption of Rule 16 has not changed the rule permitting review of all reasons

urged in a motion for a new trial, whether or not such reasons have been adopted by the trial court. Were the case otherwise, one who is entitled to a new trial on a ground urged in the trial court would be denied an appellate review of the trial court's error in rejecting such valid reason for granting the motion. See the reasoning in *Larson v. Seattle, supra.*

One reason unsuccessfully urged in the trial court for granting a new trial relates to overruling of respondents' objection to a hypothetical question asked of Dr. O'Neil. The objection was based upon the ground that the hypothetical question went outside the record in certain particulars and failed to include all of the material facts. In objecting to the question, respondents cited four respects in which the question went outside the record, three of which are renewed here. They did not call attention to any particular material fact which had been omitted, but here point to two such facts.

Confining our attention to the specific defects claimed in the trial court and renewed here, we are of the view that the hypothetical question fairly reflects the pertinent evidence. To the extent that there were minor variances, the same were not prejudicial. Also to be considered is the fact that Dr. O'Neil's answer to this question was, in a sense, cumulative evidence. Dr. Rosellini, a goiter specialist, expressed an opinion similar to that given by Dr. O'Neil in answer to the hypothetical question. The trial court did not err in declining to grant a new trial on this ground.

Another reason for granting a new trial which was unsuccessfully urged in the trial court has to do with the testimony of Dr. O'Neil concerning the condition of the bones and presence of arthritis in the spine of Mrs. Johnson. This testimony was given in response to questions as to conditions revealed by the X rays and the doctor's diagnosis of Mrs. Johnson's ailments. Dr. O'Neil's diagnosis, based on the testimony objected to, was traumatic spondylitis. He explained that this means contusion of the cervical-dorsal and lumbosacral spine. He also stated that there was a

mild concussion with post-traumatic cephalalgia or post-traumatic headache.

■ The trial court was correct in ruling that the testimony in question was relevant to the allegations of damages set out in the complaint. It was there alleged that Mrs. Johnson received numerous abrasions and contusions; received concussion of the brain and injury to her head "and the contents thereof"; suffered sprain and contusion of the cervical-dorsal and lumbosacral spine; received injuries to the nerves, ligaments, and muscles of her shoulders, neck, left chest, right hip and knee, and her right thigh.

■ The testimony in question did not, as respondents urge, pertain to aggravation of a pre-existing condition, although it may have served as a foundation for subsequent testimony of that kind. In any event, however, evidence as to aggravation of a pre-existing condition may be received, even though there is no allegation of such aggravation in the complaint. See *Frick v. Washington Water Power Co.,* 76 Wash. 12, 135 Pac. 470.

The trial court was correct in holding that reception of this evidence did not entitle respondents to a new trial.

The remaining reasons for granting a new trial which respondents unsuccessfully urged in the trial court relate to the giving of certain instructions.

■ The objections which respondents voiced concerning instruction No. 15, during argument on the motion for new trial, were not covered in their exception to this instruction. This court will not review the denial of a new trial for error in the instructions, unless timely exceptions were taken to such instructions. *Ittner v. McDonald,* 190 Wash. 526, 69 P. (2d) 566.

Respondents next urge that it was error to give instruction No. 30, in so far as it permitted the jury to take into consideration any diminution of earning power as part of Johnson's damages. It is contended that there was no evidence in the record to warrant the giving of this part of the instruction.

■

 Johnson appeared on the witness stand and testified as to his age and the nature of his injuries. He further testified that he was unable to work as before the accident, and that after each work day he suffered from extreme fatigue. This evidence is sufficient to sustain a jury finding of diminished earning power. See *Riddel v. Lyon*, 124 Wash. 146, 213 Pac. 487, 37 A. L. R. 486; *Dowd v. Morris*, 133 Wash. 215, 233 Pac. 320.

It is next contended that instruction No. 31 was erroneous, in that it allowed the jury to award damages for mental suffering, without limiting the item to that suffering which was the proximate result of the accident. This contention is without merit, as a reading of this instruction as a whole reveals that the recoverable damages for mental suffering were so limited.

Respondents advance two reasons why, in their opinion, it was prejudicial error to give the second paragraph of instruction No. 33. The first is that, in effect, it erroneously told the jury that, negligence on the part of respondents having been established, the burden shifted to respondents to limit appellants' recovery. The second reason is that this paragraph of instruction No. 33 is in conflict with instructions Nos. 4 and 6.

Respondents took the following exception to this instruction:

"Defendants except to the giving by the court of instruction No. 33 and particularly that portion in the second paragraph where it states in this connection, 'I instruct you that negligence having been established from which bad results would naturally follow,' on the ground and for the reason that, that approaches to an instruction by the court that the defendants in this case were negligent and that some bad results flowed from that negligence."

 It will be observed that the objections which respondents voiced in their exception to this instruction were that the court, in effect, instructed that respondents were negligent as a matter of law, and that it commented on the evidence relative to the results flowing from such negligence. Neither of these objections was renewed on appeal,

and the objections which respondents here advance were not called to the attention of the trial court in the exceptions. It follows that we cannot review the denial of a new trial for error in the giving of this instruction. *Ittner v. McDonald, supra.*

Respondents' final point relates to instruction No. 29, concerning the scope of employment. It is contended that the evidence was so clear that the employee driving respondent corporation's car was not within the scope of his employment that the instruction should not have been given. In this connection, it is also argued that the trial court should have granted respondents' motion to dismiss Palmer Electric Company as a defendant, and should have given respondent's requested instruction No. 14 on the question of agency.

We have read the evidence regarding this issue, and have concluded, as did the trial court, that a jury question was presented.

The trial court did not err in regard to these rulings.

The order is reversed, and the cause remanded with direction to enter judgment on the verdict.

GRADY, C. J., MALLERY, DONWORTH, FINLEY, and WEAVER, JJ., concur.

OLSON, J. (dissenting)—I cannot agree with the opinion of the majority. As they state, it is well established that we will not reverse an order granting or denying a new trial, except for a manifest abuse of discretion. Also, a much stronger showing of an abuse of discretion will be re-required to set aside an order granting a new trial than one denying it. *McUne v. Fuqua*, 42 Wn. (2d) 65, 77, 253 P. (2d) 632 (1953). With those propositions in mind, I am of the opinion that we should not reverse the order in this case.

Examination of the evidence of damage to plaintiff husband shows no abuse of discretion in granting a new trial upon the ground that the verdict was excessive. There was no evidence of his earnings. It was shown that he went to work the next day after the alleged injuries occurred, and

that he had suffered no loss of income up to the time of trial. It is not shown how long it will be necessary for him to continue his treatments. The only evidence upon the extent of his disability placed it at fifteen per cent. It is not shown that he has been or will be deprived of his ability to keep his job or to enjoy his recreational activities. Further, I do not think we should use the amount demanded by plaintiff in the prayer of his complaint as any gauge in considering the soundness of this verdict in his favor.

The trial court concluded:

"9. Based upon the appearance, demeanor and testimony of each of the parties plaintiff to this action, based upon the medical testimony and record of special damages incurred by the parties plaintiff, and based upon the twenty-seven years experience I have had on the bench, I do not think I have ever received a verdict that I thought was so unconscionably excessive and so far beyond the real claim of damages, as was returned in this case;

"10. Based upon the entire proceedings in this case and the foregoing reasons set forth herein, it is the opinion of this Court that substantial justice has not been done in this case."

This demonstrates that the trial judge had the entire case in view. He was convinced that substantial justice had not been done. He was impelled to grant a new trial for the reasons separately stated in the order, and also because of their cumulative effect. In my opinion, the latter is of controlling importance. There were numerous occurrences at this trial which should not happen at a trial, and probably would not reoccur at a new trial of this case. Some of them are not approved by the majority. Considering all of them together, I doubt that we can say that their cumulative effect upon the verdict is not apparent, particularly in view of the expressions of the trial court to the contrary.

For us to sustain the verdict upon the evidence and circumstances of this case, leaves no room for discretionary action by the trial courts upon motions for a new trial. We should not thus invade their province in the performance

of this important function lodged with them by the legislature and by our rules.

The order for a new trial in this case should be affirmed, so that the case may be submitted to a jury free from the objectionable matters now inherent in this verdict.

SCHWELLENBACH and HILL, JJ., concur with OLSON, J.

December 14, 1954. Petition for rehearing denied.

